Leo **DESROSIERS**, Plaintiff-Appellant,

v.

**AMERICAN CYANAMID COMPANY,**
Defendant-Appellee,
and
**International Chemical Workers Union
A.F.L.–C.I.O. Local No. 436,**
Defendant.

**No. 276, Docket 30770.**

United States Court of Appeals
Second Circuit.

Argued Jan. 26, 1967.

Decided May 26, 1967.

Jackson T. King (Farren & King, New Haven, Conn.), for appellant.

Donald C. Lunt (Fay & Lunt, Wallingford, Conn.), for appellee.

Before MOORE and FRIENDLY, Circuit Judges, and BRYAN, District Judge.*

FREDERICK van PELT BRYAN, District Judge.

This is an appeal from a final judgment of the District Court for the District of Connecticut dismissing the two counts of the complaint laid against defendant-appellee American Cyanamid Company (Cyanamid). The judgment appealed from was entered upon an order of the District Court, pursuant to Rule 54(b), F.R.Civ.P., after motions by Cyanamid for dismissal and summary judgment and been granted.

In this action Desrosiers sued his former employer Cyanamid in two counts and his former Union, Local 436, International Chemical Workers (the Union) in two other counts. The two counts against Cyanamid charge refusal to transfer Desrosiers for medical reasons from his job as a painter to another physically less taxing in violation of Section

* Of the Southern District of New York, sitting by designation.

10.25 of the collective bargaining agreement then in force between Cyanamid and the Union. The two counts against the Union, which are not involved in this appeal, charge a violation of the duty of fair representation by failing and refusing to assist Desrosiers to obtain the transfer which he sought. Jurisdiction is alleged under § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and § 102 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412.

This is the second action brought by Desrosiers in the Connecticut District Court against Cyanamid for this alleged breach of the collective bargaining agreement. The first, a diversity action in which the Union was not named as a party, was dismissed by Judge Blumenfeld at the outset of the trial on the ground that Desrosiers had failed to utilize the grievance procedure provided in the collective bargaining agreement, and that under Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), he was required to do so before he could resort to the courts. No appeal was taken from that judgment.

Instead Desrosiers commenced the present action, this time naming both Cyanamid and the Union as defendants. The first count of the complaint, laid against Cyanamid alone, largely duplicates the complaint in the prior action. It alleges in substance the following:

Desrosiers had been employed for many years as a painter in the Cyanamid plant at Wallingford, Connecticut, and was a union member in good standing. During the course of his employment he suffered two severe back injuries, after which he was physically unable to perform his job as a painter, as Cyanamid was aware. It is alleged that in these circumstances under Section 10.25 [1] of the collective bargaining agreement Desrosiers was entitled to be transferred to another job of equal or lower classification if such a job was available and that such jobs were available. Between January 1, 1960 and November 16, 1962, his requests to Cyanamid for a transfer were rejected or ignored in violation of the agreement. As a result Desrosiers was forced to terminate his employment with Cyanamid and to accept employment elsewhere at lower wages and with reduced benefits for which he seeks damages. Allegations, not pleaded in the prior action, were added to the effect that many requests to the Union for assistance in obtaining a transfer under Section 10.25 of the agreement had also been rejected or ignored.

The second count, after repeating the allegations of the first, alleges in addition that "the refusal or failure of the defendant American Cyanamid Company to transfer the plaintiff was wanton and wilful conduct, was done with the knowledge and consent and connivance of the defendant union and was part of a conspiracy between the defendants to deprive the plaintiff of his rights under the agreement."

Cyanamid moved before Judge Blumenfeld pursuant to Rules 12(b) and 56, F.R.C.P., for dismissal and for summary judgment on the two counts on the grounds that the judgment of dismissal in the first action was *res judicata* as to the claims asserted, and that Desrosiers' failure to avail himself of contract griev-

---

1. "10.25. When it is necessary to transfer an individual employee from a job for medical reasons or compensable disability, the procedure outlined below will be followed:

    a. If there is another job of equal or lower classification in the employee's same department which he is physically able to perform and for which his experience indicates he is qualified, he will be transferred to such job.

    b. If no such job is available in his department, the employee involved may be transferred to a job of equal or lower classification in another department, provided he has the qualifications and is physically able to perform the job in question.

    It is understood in those transfers authorized by Medical in accordance with 'a' and 'b' above, only an employee with less plant seniority can be displaced."

ance procedures precluded resort to the court in any event. In support of its motion Cyanamid relied solely on the complaint in the present action, and the pleadings, the brief transcript of the trial and the judgment of dismissal in the prior action.

Desrosiers' affidavit in opposition before Judge Blumenfeld had been previously submitted in the prior action. Its contents were concisely summarized by Judge Zampano, sitting in an early stage of that case, as follows:

" * * * plaintiff details numerous incidents during the years 1960, 1961 and 1962 wherein he requested the assistance of his union to obtain a transfer and to process his grievance pursuant to the collective bargaining contract. Rebuffed continuously by excuses, e. g., union officials were 'working on it,' and it was preferable to obtain a medical transfer by 'peaceable means' rather than by using the grievance process, the plaintiff finally aired his disappointment at an open union meeting in October, 1962. Several days later the president of the union indicated the union no longer was interested in helping him because he 'loused up' by having 'shot [his] mouth off' at the union meeting. The International Union's representative likewise refused to intervene because 'they did not wish to jeopardize the good relations that they were enjoying with the Company.' "

On this record Judge Blumenfeld below held that the first count should be dismissed both because Desrosiers had never attempted fully to use the contract grievance procedure[2] by filing a complaint in writing with the employer, and because the claim was, in any event, barred by the judgment dismissing the prior action. He also dismissed the second count, containing the added allegations of conspiracy and collusion between the employer and the Union, upon the ground that "plaintiff's failure to present his grievance directly to the company, as recommended in step one of the governing grievance procedure, precludes recovery on a claim of collusion to unfairly represent him."

The underlying issues on this appeal concern the circumstances under which an individual employee, in cases governed by federal law, is required to exhaust grievance procedures provided by a collective bargaining agreement between his employer and his union before he may maintain suit in the courts to enforce rights under that agreement. The question is not without its difficulties in the light of recent case law developments on this subject. These difficulties are illustrated by what has happened thus far in the course of the two cases brought by Desrosiers in the Connecticut District Court.

In the first action (against Cyanamid only) Cyanamid at an early stage moved before Judge Zampano to dismiss the complaint and for summary judgment primarily on the ground that Desrosiers had failed to exhaust the grievance procedures provided in the collective bargaining agreement. Judge Zampano denied the Cyanamid mtions on the ground, among others, that the "uncontroverted" facts in his summary of the Desrosiers affidavit already quoted, "may well bring the plaintiff's cause within the holding of Hiller v. Liquor Salesmen's Union Local No. 2," 338 F.2d 778 (2d Cir. 1964), decided only a month before. *Hiller*, a suit by an employee against his employer and union for breach of a collective bargaining agreement, held that the employee was excused from submitting his grievance to contract arbitration between the defendants where he had charged that they had joined together "to defraud the employee of his rights." 338 F.2d at 779.[3] Judge Zampano therefore

2. See note 5, infra.

3. Compare Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); United Protective Workers v. Ford Mo-tor Co., 194 F.2d 997, 1001–1002 (7th Cir. 1952); Note, Federal Protection of Individual Rights Under Labor Contracts, 73 Yale L.J. 1215, 1228 (1964).

gave Desrosiers leave "if he should so decide, to file motions within 30 days * * * to amend his pleadings and to add Local No. 436 as a party defendant to this action." This Desrosiers did not do and the action continued in the same posture until it was dismissed by Judge Blumenfeld at the outset of the trial.

On January 25, 1965, ten days after Judge Zampano had denied the Cyanamid motions, Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), was decided. The court there reversed a state court judgment in favor of an employee against his employer for severance pay allegedly due him under the terms of a collective bargaining agreement on the ground that the employee had failed to exhaust contract grievance procedures. Federal labor policy in such cases was said to require "that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress"; that "unless the contract provides otherwise there can be no doubt that the employee must afford the union the opportunity to act on his behalf"; and that "it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so." 379 U.S. at 652–653, 85 S.Ct. at 616 (emphasis in original). The court held that in the circumstances the failure of the employee to avail himself of the grievance procedure precluded the maintenance of the action.

The court in *Maddox*, however, did not make absolute the requirement that the employee attempt use of the contract grievance procedure. For it said, without further explanation, that "[i]f the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available." 379 U.S. at 652, 85 S.Ct. at 616, citing Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), and Labor Board v. Miranda Fuel Co., 326 F.2d 172 (2d Cir. 1963). The opinion did not refer to *Hiller* nor indicate the extent, if any, to which the holding of *Hiller* might have been modified.

The law on the requirements for exhaustion of contract remedies was in this posture when, in May of 1965, the first Desrosiers case came on for trial before Judge Blumenfeld who dismissed the action on the authority of *Maddox* because there had been "apparently a complete side-stepping or evasion of the grievance procedure."

Desrosiers then commenced the present action and, as has been indicated, Judge Blumenfeld granted Cyanamid's motion to dismiss and for summary judgment on the first two counts on substantially the same grounds on which he had dismissed the prior action.

After this appeal from Judge Blumenfeld's decision was argued, however, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, No. 114 (Feb. 27, 1967) was decided by the Supreme Court. That case throws new light on what the court had previously said in *Maddox* regarding the requirement that an employee must attempt use of the contract grievance procedure before resort to the courts. *Vaca* involved a judgment of the Supreme Court of Missouri in favor of an employee who had sued his union alone alleging discharge in violation of a collective bargaining agreement and charging that the union had "arbitrarily, capriciously and without just or reasonable reason or cause" refused to take his grievance to arbitration under the applicable grievance procedures. After holding that the Missouri courts had jurisdiction of an action by an employee for breach of the duty of fair representation under § 301 of the Labor Management Relations Act, the court reversed the judgment on the ground that the employee had failed to prove that the union breached its duty of fair representation because there had been no showing that the conduct of the union had been arbitrary, discriminatory or in bad faith.

In the course of its opinion the court found occasion to discuss the effect of a union's breach of the duty of fair representation on an employee's right of action against his employer for breach of a collective bargaining agreement. On this subject the court said:

"* * * we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." [4]

Later in the opinion the court went on to say that "assuming for the moment that [the employee] had been wrongfully discharged, [the employer's] only defense to a direct action for breach of contract would have been the Union's failure to resort to arbitration, compare Republic Steel Corp. v. Maddox, 379 U.S. 650 [85 S.Ct. 614, 13 L.Ed.2d 580], with Smith v. Evening News Ass'n, 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246], and if that failure was itself a violation of the Union's statutory duty to the employee, there is no reason to exempt the employer from contractual damages which he would otherwise have had to pay * * *. The difficulty lies in fashioning an appropriate scheme of remedies." 386 U.S. at 196, 87 S.Ct. at 919.

And as to the employee's remedies it was said that he "should have no diffi-culty recovering these damages [for wrongful discharge] from the employer, who cannot, as we have explained, hide behind the union's wrongful failure to act; in fact, the employer may be (and probably should be) joined as a defendant in the fair representation suit, as in Humphrey v. Moore, supra." Id. at 197, 87 S.Ct. 920.

When the Vaca v. Sipes elaboration of what was said in *Maddox* is applied to the case at bar we think it must follow that, while the dismissal of the first count by the court below was proper, the employer was not entitled to judgment on the second count upon the record then before the court. Accordingly we affirm the dismissal of the first count, but reverse the dismissal of the second.

The problem here, as it was in *Vaca*, "is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." Id. at 185, 87 S.Ct. 914.

The collective bargaining agreement in this case provides a full procedure for processing grievances. Under Step one an employee may first seek informal adjustment of his complaint with his foreman and steward, "but, if it is still not settled, it may be put in writing by the employee and it then becomes a grievance." [5] As the agreement plainly states "all grievances shall be in writing on a form furnished by the Company." Thus

---

4. 386 U.S. at 186, 87 S.Ct. at 914, citing, e. g., Hiller v. Liquor Salesmen's Union, supra, with approval.

5. Section 11.2 of the Collective Bargaining Agreement provides in pertinent part:
     "It is agreed that harmonious relations between the parties require the prompt filing and disposition of grievances. Any grievance (as hereinabove defined) which may arise shall be dealt with immediately in the following manner:
     (1) All grievances shall be in writing on a form furnished by the Company.
     (2) Disposition of the grievance at each step to which it is carried shall be indicated on the Grievance Form and signed by the employee or the au-

thorized representative of the Union and the Company.
     (3) Chief Operators and Shift Leaders are not authorized to dispose of grievances.
     Step 1: Presentation of Grievance to the Foreman
     Any employee who has a problem or complaint may present it to his foreman. If it is not readily adjusted, the employee may counsel with his steward, but, if it is still not settled, it may be put in writing by the employee and it then becomes a grievance. The foreman shall give his answer in writing on the Grievance Form as soon as possible but, in any event, within twenty-four (24) hours (excluding his sched-

a complaint is not treated as a formal grievance unless it is put in writing by the employee. The burden of taking this formal step rests upon him and he can take this step without assistance from his union.[6]

As previously pointed out, Count one in the case at bar deviates from the complaint dismissed in the prior action only by the inclusion of an allegation that Desrosiers "made many requests to the defendant Union for its assistance in obtaining a transfer under Section 10.25" of the agreement, and that these requests, like those made to the company, were similarly "rejected or ignored." Read generously, the first count alleges nothing more than that Desrosiers was aggrieved by the failure of both the company and the Union, acting independently, to take action to transfer him under the provisions of Section 10.25. In the words of Step 1 of the grievance procedure his complaint was neither "readily adjusted" nor "settled." But it is plain that the grievance was not "reduced to writing" by Desrosiers as the contract required and no excuse is alleged for failure to do so. Thus count one presents a clear case of failure to comply with the contractual grievance procedures without any showing that resort to such remedies would be futile or useless. The claim is plainly barred under the governing case law. Vaca v. Sipes, supra; Republic Steel Corp. v. Maddox, supra; Woody v. Sterling Aluminum Prods., Inc., 365 F.2d 448 (8th Cir. 1966), cert. den., 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 471 (March 14, 1967); Broniman v. Great Atlantic & Pacific Tea Co., 353 F.2d 559 (6th Cir. 1965); see Mandel v. Motor Freight Drivers, 246 F.Supp. 805, 809 (S.D.N.Y.1964). But see Serra v. Pepsi-Cola General Bottlers, Inc., 248 F.Supp. 684 (N.D.Ill.1965).[7]

Count two, however, is in quite a different posture. It will be recalled that the second count alleged that the failure of Cyanamid to transfer Desrosiers was "wanton and wilful conduct, was done with the knowledge, consent and connivance of the defendant Union and was part of a conspiracy between the defendants to deprive the plaintiff of his rights under the agreement." Though these allegations may be somewhat inartistically drawn, if they are viewed in a light most favorable to the plaintiff as they must be on these motions, see United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), they plainly are sufficient to charge that the Union acted arbitrarily and in bad faith and thus breached its duty of fair representation within the ambit of *Vaca*. Indeed, these allegations go further and charge, as in *Hiller* that the employer and the union acted in collusion to deprive Desrosiers of his rights under the agreement. See Vaca v. Sipes, supra, 386 U.S. at 185–186, 87 S.Ct. 903, 17 L.Ed.2d 842. For purposes of withstanding a motion to dismiss on its face, the complaint suffices to allege that the employer-union conspiracy, directed at depriving Desrosiers of his rights under the agreement, included rendering futile the filing of a written grievance setting

---

uled days off) after receipt of the written grievance."

6. In Step two, as in all higher stages of the procedure, cooperation of the union representatives is necessary to further prosecute a grievance:

"Presentation of Grievance to the Department Superintendent

"If either party then wishes to carry the matter further, it shall be submitted as written in Step 1 to the Department Superintendent (or his representative) by a member of the Grievance Committee and a meeting held with the aggrieved employee, steward and member of the Grievance Committee. The Department Superintendent shall give his answer in writing on the Grievance Form as soon as possible but, in any event, within twenty-four (24) hours (excluding Saturday and Sunday) after receipt of the grievance."

7. Because of our disposition of this claim we need not discuss Cyanamid's alternative defense that count one is barred on grounds of *res judicata*.

the contractual grievance procedure in motion or deterring him from filing such a grievance.[8]

No facts were presented by the defendant employer on these motions by affidavit or otherwise showing that the allegations of count two were not true. Indeed the employer proceeded on the theory that the allegations of conspiracy and collusion were insufficient as a matter of law to excuse non-compliance with grievance procedures. The affidavit of Desrosiers is in no way inconsistent with his allegations of conspiracy and collusion.

■ Thus, as the record stood when the motion to dismiss and for summary judgment was granted on Count two, Desrosiers' claim of breach of duty of fair representation on the part of the Union and his further claim that his employer had acted in collusion with the Union to deny him his rights stood unimpeached and uncontradicted. The employer and the Union for the first time were both before the court as defendants as Vaca v. Sipes indicated they should be. Desrosiers was entitled to prove his allegations in Count two if he could; if proven they might well be sufficient to overcome the employer's defense of failure to exhaust contract grievance procedures. There were thus genuine issues of material fact to be tried. Judgment should

not have been granted against plaintiff on count two[9] in this posture of the action.

Finally, Cyanamid contends that count two is barred under principles of *res judicata* by the judgment of dismissal in the prior action. Cyanamid points out that in the prior action the allegations directed to the futility of resort to contract grievance procedure could have been pleaded and the Union could have been joined as a party defendant, as indeed, the district court in the first action gave plaintiff leave to do. Cyanamid urges, therefore, that the rule against splitting causes of action should be applied to bar the second count.

■ It is true that "on the whole, the principle against splitting is a salutary doctrine." But "inflexibly applied there can be little doubt that it results at times in unwarranted hardship." 1B Moore, Federal Practice ¶ 0.410[2], at 1169 (2d ed. 1965), quoted with approval in International Rys. v. United Fruit Co., 373 F.2d 408, 419 (2d Cir. 1967). We think this is a case where undue hardship would result from application of the doctrine against splitting and that it should not be inflexibly applied here to bar count two in the present action.

The judgment in the prior action on which Cyanamid relies adjudged that "this action is dismissed for lack of ju-

8. We think Judge Blumenfeld read the complaint too narrowly when he said, "Nowhere is it alleged or claimed that the employer presented or took any steps, alone or in conjunction with the union, to hamper or prevent the plaintiff from filing a written claim of grievance." The facts alleged in plaintiff's affidavit add further support to a broader reading of the complaint.

9. This conclusion seems to have been anticipated by the weight of the pre-*Vaca* authority dealing with the right of an employee to seek redress in the courts for violation of a collective bargaining agreement by the employer. Woody v. Sterling Aluminum Prods., Inc., supra, 365 F.2d at 453; Broniman v. Great Atlantic & Pacific Tea Co., supra; Mandel v. Highway and Local Motor Freight Drivers, supra, 246 F.Supp. at 809; see

Fiore v. Associated Transport, Inc., 255 F.Supp. 596 (M.D.Pa.1966); cf. Miller v. Spector Freight Systems, Inc., 366 F.2d 92 (1st Cir. 1966) (per curiam). But see Wade v. Southern Pacific Co., 243 F.Supp. 307 (S.D.Tex.1965); Guszkowski v. United States Trucking Corp., 162 F.Supp. 847 (D.N.J.1958). See also N.Y.L.J. March 7, 1967, p. 1, col. 3, reporting the approval by the New York County Lawyer's Association's Committee on Labor Relations of a proposed amendment to § 301 which would restrict the right of an individual to sue for breach of a collective bargaining agreement unless he "charges that his union has unreasonably failed to present his grievance under a contract and that his employer had willfully and knowingly participated in such conduct."

risdiction." If in fact want of jurisdiction was the ground of dismissal—and there is some doubt on that score—it is plain that under well settled principles the prior judgment would not bar count two in the present action. E. g., Costello v. United States, 365 U.S. 265, 285–286, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Smith v. McNeal, 109 U.S. 426, 3 S.Ct. 319, 27 L.Ed. 986 (1883). The allegations as to futility in count two, if proven, would remove the jurisdictional impediment which had previously been held to bar the claim.

The District Court did not rest its dismissal of the second count on *res judicata* principles. Judge Blumenfeld referred to "a developing body of law concerning the employee's right to fair representation in the bargaining unit" which he quite properly characterized as "presently in the embryonic stage." He held that under the law as he then understood it to be plaintiff's failure to file a written grievance "precludes recovery on a claim of collusion to unfairly represent."

Since then Vaca v. Sipes seems to have signalled that the law on this subject has passed beyond the embryonic stage. Under guidance of what was said in *Vaca* and with the Union added as a party defendant as *Vaca* suggested, the issues raised by the second count are now for the first time in a posture in which the relevant facts can be fully and understandingly developed.

Moreover, it is of some significance that the first action was dismissed at the outset of the trial. The merits of the plaintiff's grievance were not determined. There was a simple holding that his failure to utilize the contract grievance procedure without giving any valid excuse therefor barred his suit under what was thought to be the *Maddox* rule. The defendant was not subjected to the hardship of a full trial nor is it now required to relitigate questions of fact previously tried and determined.

In the special circumstances of this case, and in the light of the developments of the applicable law during the course of the litigation, we hold that the second count is not barred by the judgment dismissing the first action.

The judgment appealed from is affirmed as to the dismissal of the first count of the complaint against defendant Cyanamid and reversed as to the dismissal of the second.