Edwin S. BALDWIN, Plaintiff,

v.

POUGHKEEPSIE NEWSPAPERS, INC., doing business as Poughkeepsie Journal, et al., Defendants.

No. 74 Civ. 79 R.J.W.

United States District Court,
S. D. New York.

March 31, 1976.

See also, D.C., 410 F.Supp. 648.

Hugh S. Silberstein, Barrett Hess, Rochester, N. Y., for plaintiff.

Robert E. Ferguson, Poughkeepsie, N. Y., for defendant Poughkeepsie Newspapers, Inc.

Ritter & Hankin, Poughkeepsie, N. Y., for defendants ITU and ITU Local 315; Leo M. Ritter, Poughkeepsie, N. Y., of counsel.

WARD, District Judge.

Defendant International Typographical Union Local # 315 ("Local 315") moves for an order, pursuant to Rule 12(c), Fed.R.Civ.P., dismissing the complaint in this action, or, in the alternative, for an order pursuant to Rule 56, Fed.R.Civ.P., for summary judgment in its favor. Plaintiff Edwin S. Baldwin ("Baldwin") and defendant Poughkeepsie Newspapers, Inc. ("Newspapers") each move for summary judgment. For the reasons hereinafter stated, all three motions are denied.

Plaintiff brings this action pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. At the time of the events on which this suit is based, he was an employee of Newspapers and a member of Local 315. The complaint charges Newspapers with a violation of the union-management collective bargaining agreement and alleges that Local 315 breached the duty of fair representation which it owed Baldwin.

This action arises out of plaintiff's transfer to the night shift in Newspapers' composing room. In May of 1973,

when the reassignment was posted, Baldwin objected, asserting that, under the terms of the union contract, other employees of lower priority (seniority) should be obliged to fill the position.

Plaintiff submitted a letter from a doctor indicating that night work would be inadvisable for him. Copies of this letter were transmitted to representatives of both the Union and management. When the date of the shift transfer arrived, Baldwin called in sick, obtaining substitutes for his assignment.

On May 24, 1973, plaintiff applied for New York State Unemployment Insurance, and was accepted for benefits. In a subsequent exchange of letters, Newspapers indicated its belief that these facts signalled that Baldwin had quit his job while Baldwin responded that he had no intention to do so. Newspapers considered plaintiff terminated effective July 5, 1973.

In support of its motion to dismiss, Local 315 urges that plaintiff's claim of a conspiracy between the defendants to deprive him of his rights under the collective bargaining agreement does not fall within the jurisdiction of this Court. Furthermore, the Local asserts that Baldwin cannot state a claim upon which relief can be granted unless he specifies the breach of fair representation of which he complains. Plaintiff's complaint survives this challenge. In *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1245–46 (2d Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), the court indicated

> appellants' failure to allege either that Local 5895 wrongfully and in bad faith refused to process their grievances pursuant to the established grievance procedure in violation of the Local's duty of fair representation, or that Carrier repudiated or refused to follow the grievance procedure, or that Carrier and Local 5895 effectively conspired to deprive appellants of their rights

under the agreement, mandates a dismissal of the claim. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Desrosiers v. American Cyanamid Company, supra* [377 F.2d 864 (2d Cir. 1967)].

By alleging the bad faith refusal of Local 315 to process his grievance and the complicity of the defendants in seeking to deprive him of his rights under the Union contract, Baldwin has complied with the requirements set forth in *Abrams,* and his claim may not be dismissed at this time.[1] The Court notes, in this regard, the Second Circuit's recognition, "of our obligation, particularly in cases in the labor relations field, to construe the complaint most liberally in favor of the plaintiff[s]." 434 F.2d at 1239.

In support of its alternative motion for summary judgment, Local 315 asserts that plaintiff has failed to exhaust remedies available to him before the National Labor Relations Board and under the grievance procedure provided by the Union contract. Newspapers also points to the grievance mechanism to bolster its Rule 56 motion and, in addition, claims that Baldwin's transfer was carried out in compliance with the collective bargaining agreement rather than in breach of it.

The assertion by Local 315 that Baldwin must first exhaust his remedies before the NLRB is erroneous. This Court has jurisdiction over a suit which charges the employer with a § 301 breach of contract and also claims that the Union has failed to fulfill its duty of fair representation. *Vaca v. Sipes, supra* at 183–87, 87 S.Ct. at 913, 17 L.Ed.2d at 853.

The success of Baldwin's action, therefore, hinges upon a determination of the responsibilities of the parties under the terms of the collective bargaining agreement, in particular, the provisions relating to priority and grievances.

---

1. Although the complaint describes the breach of the duty of fair representation as arbitrary, the term of art "bad faith" appears in plaintiff's affidavit and the Court has considered the latter an amplification of the complaint.

In two recent cases, the Second Circuit has indicated that summary judgment should be selectively granted. *Heyman v. Commerce & Industry Insurance Company,* 524 F.2d 1317 (2d Cir. 1975); *Judge v. Buffalo,* 524 F.2d 1321 (2d Cir. 1975). In the words of the Court of Appeals:

> [T]he "fundamental maxim" remains that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried. *American Manuf. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2d Cir. 1971). Moreover, when the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute, *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *Heyman, supra* at 1319–20.

The movants have failed to meet their burden under Rule 56. For example, the collective bargaining agreement stipulates that an employee should present a written grievance. Plaintiff asserts that the letter from his doctor and his letter denying that he had voluntarily quit constituted written grievances. Local 315 and Newspapers nonetheless claim that Baldwin has not fulfilled his obligations under the grievance procedure. Since the essence of a breach of the duty of fair representation claim is the union's arbitrary, discriminatory, bad faith conduct, it will be necessary for the trier of facts to hear how the grievance mechanism commonly operates in order to determine whether or not plaintiff has been derelict.

In other areas the ambiguity of the Union contract and the failure of the parties to fill in the gaps, have left fact issues open. Defendants state that Baldwin neglected to take advantage of opportunities to learn other jobs on the newspaper. Plaintiff's allegations are quite the reverse. He complains that his desire to be trained in other skills was thwarted. This dispute bears directly on the question of Baldwin's competency to perform tasks which would have enabled him to exercise his priority, *i. e.,* seniority rights. In fact, the general operation of Newspapers' priority system under the contract, and the participation of Local 315 therein, must be examined at trial.

Numerous other fact questions abound in the papers. Was Baldwin fired or did he quit? Was he barred from attending chapel meetings? Did he refuse to meet with representatives of management when the Union suggested such a meeting? These questions cannot be satisfactorily answered without a trial.

In summary, therefore, this Court concludes that it has jurisdiction over the subject matter of the complaint, that plaintiff has stated a claim under § 301 against Newspapers for violation of the Union contract and against Local 315 for breach of the duty of fair representation, and that fact issues exist which preclude summary judgment. Accordingly, the three motions, of Local 315, Newspapers, and Baldwin, respectively, presently before the Court are denied. The parties are directed to file a pre-trial order on or before April 30, 1976.

It is so ordered.