*Caldarera v. International Longshoremen's Ass'n*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand nineteen.

PRESENT:
> ROBERT D. SACK,
> REENA RAGGI,
> SUSAN L. CARNEY,
> > *Circuit Judges*,

_____

WILLIAM CALDARERA,

> *Plaintiff-Appellant*,

> v.                                                                              No. 18-2254-cv

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,
LOCAL 1, GLOBAL CONTAINER SERVICES, INC.,

> *Defendants-Appellees*,

DAVID CICALESE, as President of International
Longshoremen's Association, Local 1,

> *Defendant.*

_____

FOR APPELLANT:                          ARTHUR Z. SCHWARTZ, Advocates for
                                        Justice, Chartered Attorneys, New York,
                                        NY.

FOR APPELLEES:                          JOHN P. SHERIDAN (Kevin J. Marrinan, *on
                                        the brief*), Marrinan & Mazzola Mardon,
                                        P.C., New York, NY, *for Appellee
                                        International Longshoremen's Association, Local
                                        1.*

                                        IAN A. WEINBERGER (Donato Caruso, *on
                                        the brief*), The Lambos Firm, LLP,
                                        Tarrytown, NY, *for Appellee Global Container
                                        Services, Inc.*

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 3, 2018, is **AFFIRMED**.

Plaintiff-appellant William Caldarera appeals from the dismissal with prejudice of his complaint against defendants-appellees International Longshoremen's Association, Local 1 ("Local 1") and Global Container Services, Inc. ("GCT")[1] for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.

Caldarera is a longtime member of Local 1 who has worked as a "checker" for 26 years for various companies in the ports of New York and New Jersey. His employment is

---

[1] Although named in the complaint as "Global Container Services, Inc.," the defendant-appellee employer asserts that its correct name is "GCT Bayonne LP." For the purposes of this order, the Court will refer to the employer as "GCT."

governed by a collective bargaining agreement ("CBA") between Local 1's parent union, the International Longshoremen's Association ("ILA"), and the New York Shipping Association ("NYSA"), a consortium of employers that includes GCT. The CBA generally requires port employers to respect checkers' seniority in making initial hiring decisions but is silent as to whether, once hired, senior checkers are guaranteed more desirable placements than junior co-workers.

On September 20, 2016, while employed by GCT, Caldarera allegedly quarreled with Local 1 steward Michael Fulbrook after Caldarera accused Local 1 of tolerating "no show" jobs. Incensed, Fulbrook allegedly walked into a GCT manager's office and declared: "I don't want him [Caldarera] working here. Check him out!" J. App'x 23. Caldarera alleges that three days later, on September 23, a top GCT official approached him and advised: "After today, you are not getting hired here anymore." *Id.* Caldarera in fact worked again at GCT for a brief period in December 2016. In early January 2017, however, he allegedly received a copy of a "Do not hire" letter from GCT. The letter charged (falsely, Caldarera alleges) that he failed to carry out his job duties properly and amounted to his dismissal by GCT, an action urged by Local 1, in Caldarera's telling. Following this development, Local 1 allegedly continued to retaliate against Caldarera, by directing other employers to assign him to jobs that allowed for fewer overtime opportunities, resulting in an approximately 25% decrease in his income.

In response, between October 20, 2016, and May 1, 2017, Caldarera filed thirteen grievances relating to allegedly adverse work placements at various employers. He did not, however, grieve his dismissal from GCT. Instead, on February 24, 2017, he filed the instant suit in the U.S. District Court for the Southern District of New York, attaching the grievances to his complaint.

In June 2017, after the parties briefed GCT and Local 1's joint motion to dismiss Caldarera's amended complaint, Caldarera's grievances were adjudicated by a joint ILA-NYSA Labor Relations Committee ("LRC"), a labor-management body consisting of an equal number of representatives drawn from NYSA employers and from the ILA. Following a hearing at which Caldarera was represented by counsel, the LRC rejected all of Caldarera's

3

grievances relating to his work placements. It also ruled that, because Caldarera had not filed a formal grievance within 180 days of GCT's alleged refusal to hire him, his newly-asserted complaint on this score was barred as untimely.[2] The CBA provides that, absent deadlock, the LRC's determinations are "final and binding, . . . constitute an enforceable arbitration award, and no further appeal shall be permitted." J. App'x 74.

In his amended complaint, Caldarera claims that GCT breached the CBA by terminating him without cause through its "Do not hire" letter. He also asserts that Local 1 violated its statutory duty of fair representation to him by colluding with GCT to terminate him from employment at GCT, and with other employers to deprive him of desirable jobs that are customarily assigned to individuals with his level of seniority.

**II.**

We review *de novo* a district court's decision to dismiss a complaint under Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the factual allegations in a complaint need not be "detailed or elaborate" to survive a Rule 12(b)(6) motion, they must be "sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

The District Court heard Caldarera's claim against GCT under Section 301(a) of the Labor Management Relations Act, which provides for exclusive federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). In such cases, a plaintiff is first "required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement," and, "[s]ubject to very limited judicial review, [is] bound by the result according

---

[2] The District Court took judicial notice of the LRC decision pursuant to Federal Rule of Evidence 201(b). We identify no error in this regard.

4

to the finality provisions of the agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983). A narrow exception to this rule may lie, however, when "the union representing the employee in the [grievance] procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. In such cases, an employee may bring a "hybrid" suit against both employer and union, where he must both show that the "discharge was contrary to the contract" and "carry the burden of demonstrating a breach of duty by the Union." *Id.* at 165 (internal quotation marks omitted).

Caldarera concedes that he failed to exhaust his contractual remedies as to his challenged termination from GCT. His hybrid claim is therefore viable only if he can demonstrate that initiating the grievance process as to this termination would have been futile. He may do so if he can plausibly allege, for example, an employer-union conspiracy to deprive him of his rights under the contract. *See Hiller v. Liquor Salesmen's Union Local No. 2*, 338 F.2d 778, 779 (2d Cir. 1964) ("[W]here the employee's case is based upon a conspiracy between his union and his employer . . . he cannot be forced to submit that issue to an arbitration between the employer and the union."); *Desrosiers v. Am. Cyanamid Co.*, 377 F.2d 864, 870 (2d Cir. 1967) (denying motion to dismiss where the allegations of an "employer-union conspiracy" were sufficient to "render[] futile the filing of a written grievance"). Although we ultimately agree with the District Court that the LRC decision was binding, we first consider whether this exception might excuse his failure to exhaust.

We conclude that Caldarera has not plausibly pleaded an "employer-union conspiracy" that would excuse his failure to file a grievance relating to his termination from GCT. First, Caldarera's allegation that filing a grievance relating to his purported termination from GCT would have been futile is undermined by the fact that the amended complaint itself cites thirteen other grievances filed by Caldarera—including at least one relating to dissatisfaction with his work placement at GCT. It is implausible that Caldarera would utilize the grievance process so extensively for various CBA disputes, including one with GCT, yet consider it futile to do so only for his termination dispute. *See Iqbal*, 556 U.S. at 678.

Second, Caldarera's allegations of an "employer-union conspiracy" are at best skeletal. The amended complaint asks the Court to infer the existence of impermissible collusion exclusively based on Caldarera's exchange with Fulbrook in September 2016, a comment made by a GCT officer several days later, and the "Do not hire" letter that Caldarera received several months afterwards. But, apart from a rough proximity in time, it pleads no facts that would allow the Court to infer a causal connection between Fulbrook's isolated remark in September 2016 and the "Do not hire" letter of January 2017. This does not suffice to "nudge[] [Caldarera's] claims [concerning an employer-union conspiracy] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Caldarera's hybrid claim against GCT and Local 1 is therefore barred because he failed to exhaust his contractual remedies.[3]

### III.

The District Court also interpreted Caldarera's complaint to pursue "standalone" claims against Local 1 for breaching its duty of fair representation, both with regard to his alleged termination by GCT and his dissatisfaction with his work assignments at other employers. To state a claim for breach of a union's statutory duty of fair representation, Caldarera must plausibly allege union actions that "are wholly arbitrary, discriminatory, or in bad faith." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotation marks and alteration omitted). A union's actions are unlawfully "arbitrary" only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation omitted). A finding of bad faith, in turn, requires a showing of "fraudulent, deceitful, or dishonest action." *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999).

We affirm the District Court's dismissal of Caldarera's claim that Local 1 breached its duty of fair representation by colluding to have him terminated by GCT. His allegations of

---

[3] This is the same conclusion the LRC reached with respect to the termination claim against GCT, which is itself a final and binding arbitration decision. *See DelCostello*, 462 U.S. at 164.

6

collusion regarding termination are similarly conclusory to his allegations that an "employer-union" conspiracy excused him from filing a written grievance, and, as such, are insufficient to state a plausible claim. *See Twombly*, 550 U.S. at 561.

Caldarera's assertion that Local 1 breached its duty of fair representation by itself steering him into less desirable work assignments fares no better. As the District Court held in its July 3, 2018 opinion and order, Caldarera pleads no facts that would connect his September 2016 altercation with Fulbrook to "the proliferation of suboptimal assignments he received from *multiple* employers—not a single conversation, meeting, or other evidence of the alleged coordination." *Caldarera v. Int'l Longshoremen's Ass'n, Local 1,* No. 17-CV-1414 (VEC), 2018 WL 3242269, at *4 (S.D.N.Y. July 3, 2018). The grievances attached to the complaint do not allege any bad faith or discriminatory actions by any Local 1 steward or employer representative against Caldarera. Instead, they claim only lost wages based on the notion that, under the CBA, his seniority entitles him to favorable job assignments once hired.

Furthermore, the LRC expressly rejected Caldarera's interpretation of his entitlements under the CBA. It explained that "[i]t has been the longstanding and contractually authorized practice in the Port of New York and New Jersey that seniority protects a checker's right to be hired for the day, but seniority does not deprive an employer of the management rights of assigning employees to specific work functions as the employer deems best for the efficiency and operation of the employer's terminal." J. App'x 233. We are as bound by the LRC's interpretation of the CBA as we would be by an arbitral award. *See Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) ("[I]f the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the [CBA] . . . it is of course not open to the courts to reweigh the merits of the grievance."). The LRC ruling is also persuasive evidence that Local 1 did not act in bad faith or arbitrarily. Because Caldarera failed to make any non-conclusory allegations from which to infer that Local 1 engaged in arbitrary, discriminatory, or bad faith conduct, we affirm the District Court's determination as to Caldarera's work assignments claim as well.

* * *

We have considered Caldarera's remaining arguments and conclude that they are without merit.  For the foregoing reasons, the District Court's judgment is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court