Karl R. SMITH, James Reed, Joseph Wachtre and Ed Owens, Plaintiffs,

v.

PITTSBURGH GAGE AND SUPPLY COMPANY, a Pennsylvania Corporation,

and

Steamfitters Local Union No. 449 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, an Unincorporated Association, Defendants.

Civ. A. No. 65-067.

United States District Court W. D. Pennsylvania.

June 16, 1965.

Donald E. Rohall, Pittsburgh, Pa., for plaintiffs.

John G. Wayman and Leonard Schein-holtz, Pittsburgh, Pa., for defendant Pittsburgh Gage and others.

John L. Bailey, Pittsburgh, Pa., for defendant Steamfitters Local.

ROSENBERG, District Judge.

Several motions are here for determination. The first is a Motion to Dismiss as made by one defendant, Pittsburgh Gage and Supply Company. The second is a Motion Raising Questions of Lack of Jurisdiction over Subject Matter, and with it, a Motion for Failure to State a Claim Upon Which Relief Can Be Granted, as made by the second defendant, Steamfitters Local Union No. 449.

In the complaint separate counts are set forth for each plaintiff alleging that the defendants entered into a conspiracy to violate their collective bargaining agreement and deny them their employment rights. They aver, in substance, that jurisdiction rests with this Court by virtue of § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185. It is further averred that at all times material to the complaint the defendant union was the authorized collective bargaining agent for the defendant company; that both defendants breached the collective bargaining agreement in demanding that the individual plaintiffs leave, quit and withdraw from the defendant union and join some other bargaining unit; that the plaintiffs were threatened with economic and physical reprisals for their failure to do so; that they were unfairly discharged from employment for their failure to quit the defendant union; that the defendants violated the collective bargaining agreement in violating the job classification provisions, in violating the seniority provisions and in violating the grievance and dispute provisions; that the union contract was further violated when the defendant company hired and transferred an equal number of non-union persons to perform the work formerly done by the plaintiffs; that each plaintiff has lost the averred amounts; and that each is entitled to an equal sum in punitive damages.

The Union points out in its brief that the plaintiffs had originally filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, but that preliminary objections were sustained, and upon appeal to the Pennsylvania Supreme Court, Smith v. Pittsburgh Gage and Supply Co., 412 Pa. 171, 194 A.2d 181 (1963), the action of the Court of Common Pleas was affirmed.

It is also stated that the Pennsylvania Supreme Court had held that this was not an action for the State courts, but rather one which properly should have come before the National Labor Relations Board in accordance with the Act of Congress as an unfair labor practice. This is mentioned only because it was raised by the defendant Union in its argument.

While it does appear that the complaint in the Common Pleas Court and the one filed here are similar, this action here must be made in accordance with the Act of Congress and the circumstances of the case. § 301 of the Labor Management Relations Act provides in part:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce may be brought in any district court of the United States having jurisdiction of the parties * * *."

The complaint here does not set out which sections of the contract have been violated.

Section 301 provides for bringing actions for violations of contracts between an employer and labor organizations in a district court, but it does not confer jurisdiction in suits between an employee and a labor organization. Palnau v. Detroit Edison Company et al., 301 F.2d 702, C.A. 6, 1962; Copra et al. v. Suro et al., 236 F.2d 107, C.A. 1, 1956. However, as against an employer for violation of a contract, individuals may sue in their own rights as a class. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, 1962.

In San Diego Building Trades Council, etc. et al. v. Garmon et al., 359 U.S. 236, at page 245, 79 S.Ct. 773, at page 780, 3 L.Ed.2d 775, 1959, Mr. Justice Frankfurter said:

"* * * When an activity is arguably subject to § 7 or § 8 of the

[National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

Congress has committed certain functions regarding relationship between employers and employees in its National Labor Relations Act (29 U.S.C.A. § 151 et seq.)

In § 7 it provided for protections such as the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives, to engage in other concerted activities, and to refrain from such other activities.

In § 8 it provided for prohibitions in that it declared certain activities as unfair labor practices, such as to coerce employees, to dominate or interfere with the organization of any labor organization, to discriminate in regard to hiring, to discharge or otherwise discriminate against any employee because he had filed charges or given testimony under this chapter of the National Labor Relations Act, or to refuse to bargain collectively with employee representatives. Certain activities of labor organizations are declared to be unfair labor practices, such as to coerce employees in the selection of their representatives, to refuse to bargain collectively, etc.

■ These functions are not for the courts, nor do they clash with the authority given to United States District Courts in § 301 of the Labor Management Relations Act of 1947 (29 U.S.C.A. §§ 141, 185). San Diego Building Trades Council, etc. et al. v. Garmon, supra. So that where certain unfair labor practices may be involved so far as they relate to violation of contracts, they present an exception and may be instituted in a district court of the United States. Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483; Local 174, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; Smith v. Evening News Association, supra.

The plaintiffs here, it appears, would have me place their case within this exception. But is their action based upon the collective bargaining contract? I cannot find that it is. It is a suit based on alleged unfair labor practices.

The defendant company also points out in its brief on its Motion to Dismiss that the agreement upon which this action is based had not been in effect when the aggrieved activities of which the plaintiffs complain took place. This was supported by the follow-up affidavit which indicates that between April 30, 1960 and August 26, 1964, there was no contract in existence between Pittsburgh Gage and Supply Company and Steamfitters Local 449. The plaintiff Karl R. Smith submitted a counter affidavit to the effect that the contract was in full force and effect until the new contract was signed on August 26, 1964.

■ While this ordinarily would have been a fact-finding determination, it is mentioned only insofar as it may be or lend any support to dismissal of the complaint. We are here permitted to rely upon affidavits as they support motions to dismiss. United States v. Newmont Mining Corporation, D. C., 34 F.R.D. 504, 1964.

From the defendant company's affidavit, it would appear that the plaintiffs' originally alleged damages accrued in the period between January 6, 1961 and January 1, 1965. The contract, as an exhibit to the plaintiffs' complaint, states that it was to exist " * * * from June 1, 1959 to June 1, 1960", and thereafter it was to continue in full force until a new agreement was negotiated. It was also provided in § 19 of the contract that either party could terminate or modify the agreement on May 1, 1960 by notifying the other party in writing of its desire at least sixty days prior to the expiration date of the contract. According to the affidavit, the Union notified the company by letter on February 22,

1960, that the contract was to expire on April 30, 1960. The company acknowledged receipt of this information and that was the end of the contract.

 Accordingly, it appears here that the complaint states an unfair labor practice with jurisdiction in the National Labor Relations Board where the plaintiffs would be required to apply for relief. In any event, the facts as submitted by the plaintiffs' complaint and the defendant's affidavit, as the case may be, indicate no factual basis for the plaintiffs' claim. Accordingly, the plaintiffs' complaint will be dismissed.