**Karl R. SMITH et al.**

v.

**PITTSBURGH GAGE AND SUPPLY COMPANY, Appellant.**

**No. 71–1390.**

United States Court of Appeals, Third Circuit.

Argued March 17, 1972.

Decided July 17, 1972.

Gilbert J. Helwig, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

J. M. Maurizi, Suto, Power, Balzarini & Walsh, Pittsburgh, Pa., for appellees.

Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and VAN ARTSDALEN, District Judge.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This case is now before us for the third time.[1] Appellant Pittsburgh Gage

---

1. The prior litigation in this case is considerable. Earlier decisions in this matter are reported at: 412 Pa. 171, 194 A.2d 181 (1963); 245 F.Supp. 864 (W. D.Pa.1965); aff'd 361 F.2d 219 (3d Cir. 1966); 270 F.Supp. 192 (W.D.Pa. 1967), rev'd. 388 F.2d 983 (3d Cir. 1968).

and Supply Company (Company) seeks to overturn a jury finding that it wrongfully discharged appellees from their jobs in violation of an oral contract. Jurisdiction for the suit is based on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970).

The Company's first contention is that this suit is barred by the res judicata effect of the first district court decision dealing with this case.[2] In explaining why we believe that that judgment does not bar this action, we must review the tortuous history of this case.

For several years prior to 1959 Steam Fitters Union Local No. 449 represented the working force at the Company's plant. The complaint alleges that in 1959, the union and management signed a one year contract which was to extend to May 1, 1961, "and shall continue in full force and effect until a new Agreement is negotiated, but both parties may mutually agree to change or amend any part of this Agreement at any time." By letter dated February 22, 1960, the Union notified the Company of its intention to terminate the agreement on April 30th next and the Company acknowledged the notice.

There were bargaining sessions thereafter between the Company and the Union representatives. The negotiations resulted in a "package" for the employees aggregating about 37½ cents per hour divided between wages, a major medical plan and a proposed pension. No agreement was signed at the time, however, because the benefits for the pension plan could not be spelled out without the completion of actuarial studies. Notwithstanding, the parties allegedly shook hands on the agreement, and as of July 1960 the new medical plan went into effect. The employees also began earning money at their new wage scale retroactive to May 1, 1960.

On July 20, 1960, E. W. Olson, vice president of the Company, allegedly gave appellee Smith, a shop steward at the plant, a copy of a memorandum he had prepared stating that the working provisions of the 1959 agreement were to remain the same in the new agreement to April 30, 1963. On August 26, Mr. Olson sent another letter to Smith stating, inter alia, that the Company would live up to the basic provisions in the labor contract which expired on May 1, 1960, and that "there [would] be certain changes in the new contract which we feel sure are understood by your Union and us, and these changes would be embodied in the new contract." On August 30, Mr. Olson received a letter in return from Smith for the Union Shop Committee informing him that the Union had voted unanimously the day before to accept the Company offer and that they were agreeable to work under the terms of the 1959 agreement between them until a new agreement was signed.

Nothing more happened until December 31, 1960, when the Company submitted a contract proposal to the Union. It contained all of the previously negotiated increases and benefits which had been in effect for some months, and also a proposed pension plan which did not, however, meet the Union's expectations. The employees rejected the contract as submitted but continued to work. On January 19, 1961, Olson wrote Smith another letter stating that: "We are working under the provisions of the old contract until a new one is signed."

Smith alleges that on January 27, 1961, he was discharged by the Company. The other appellees make similar allegations of discharges in the same month although on other dates. They contend that their dismissals were improper because they violated the contract and were motivated by their activities on behalf of the rest of the employees.

The appellees filed a grievance with the Union, but there was nothing done after a meeting at the "first step" in the grievance process. The Company contended that no contract existed. It has continued to insist through all the

---

2. 245 F.Supp. 864 (W.D.Pa.1965).

litigation preceding this appeal that no contract was in force.

Appellees first filed an unfair labor practice charge with the National Labor Relations Board (NLRB). The Regional Director determined that there was insufficient evidence to proceed. Appellees then filed suit in the state courts, but the Supreme Court of Pennsylvania determined that its jurisdiction was pre-empted by the NLRB.[3]

At this point, appellees sought relief in federal court, alleging a conspiracy between the Union and the Company to have them discharged, and urging that the district court had jurisdiction under Section 301. Both the Union and the Company moved to dismiss. The Union contended that the matter was an unfair labor practice that could be heard only by the NLRB. The Company argued that there was no contract that could have been breached. Therefore, the court was deprived of jurisdiction because Section 301 only gives federal courts the power to enforce valid labor contracts. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The Company submitted various affidavits stating that there was no contract, and that it and the Union were in continuous negotiations for a new contract from April 30, 1961, until August 26, 1964, when a written agreement was ultimately signed. Appellees filed only one affidavit in that action. Smith deposed that "by its very terms" the 1959 agreement was to continue in full force and effect until a new agreement was signed, and that it was "common knowledge" that the old agreement had in fact remained in effect until the signing of the new agreement in 1964.

District Judge Rosenberg found that the complaint did not state an action for breach of contract cognizable under Section 301 and was primarily an action to seek redress for an unfair labor practice. Therefore, he concluded that he did not have jurisdiction. However, he also determined that on the basis of the affidavits, there was no factual basis for a conclusion that a contract was actually in effect.

Following the district court's decision, appellees attempted to reopen the judgment under F.R.Civ.P. 59. The district court refused to reopen, and in its opinion, "clarified" its previous decision. It carefully scrutinized appellee Smith's affidavit and found it defective on a number of counts. On that basis, Judge Rosenberg concluded it did not raise any proper dispute about the existence of a contract at the time of the dismissals. Appellees sought review in this court, and all parties briefed the contract. We affirmed per curiam.[4]

Appellees, however, did not yield. They instituted a new action in the district court under the assumption that if they alleged a breach of contract by the Company rather than an unfair labor practice, they would have cured the defect in their prior pleading.

Judge Rosenberg again heard this case and concluded that appellees had also had their day in court on the labor contract issue. He held that his prior opinion had concluded there was no triable issue of fact concerning the contract, and that the summary judgment was a decision on the merits which barred any relitigation of the cause of action.

Another appeal followed, and in this instance we reversed. Writing the opinion for this court, Judge McLaughlin concluded:

[I]n the sound exercise of our equitable jurisdiction [we] remand the case to the District Court for a full hearing on the issue of the existence of the contract. We choose to make this disposition because plaintiffs have not yet been given their day in court on this essential issue. . . . Although the affidavits on record before the District Court in 1965 do indicate that the contract may have expired, we feel that the importance of this is-

---

3. 412 Pa. 171, 194 A.2d 181 (1963).

4. 361 F.2d 219 (3d Cir. 1966).

sue requires a full hearing at this time. . . . 388 F.2d at 984.

Thereupon, the case was tried to a jury in a bifurcated trial on all issues except damages, with District Judge Weis presiding. The jury found in answer to special interrogatories that a contract had been in existence at the time of appellees' discharge, that they were dismissed in violation of that contract, and that appellees had attempted to exhaust the grievance and arbitration provisions of the contract. Because the issue of damages had been reserved by agreement at trial for resolution by a Master, appellants had the matter certified to this court under 28 U.S.C. § 1292(b).

■ This rather lengthy procedural history does not support appellant's contention that Judge Rosenberg's opinions barred the subsequent litigation. In fact, we believe that Judge McLaughlin's opinion for this court bars appellants from raising the res judicata issue on this appeal. Although that opinion did not explicitly state the reasons for reversing the district court and returning the case for a full hearing on the contract question, we believe that there are two answers for this conclusion.

■■ The first is that Judge Rosenberg's opinion properly dismissed the case only on the jurisdictional ground that the complaint stated an unfair labor practice. However, jurisdictional dismissals do not bar further litigation of the cause of action when the subsequent complaint cures the jurisdictional defect. Etten v. Lovell Manufacturing Company, 225 F.2d 844, 846 (3d Cir. 1955), cert. denied, 350 U.S. 966, 76 S. Ct. 435, 100 L.Ed. 839 (1956). The second suit in this series of cases stated that appellant had dismissed Smith and the other appellees in violation of the contract. In this posture, the case properly stated an action under Section 301.

■ Alternatively, Judge McLaughlin may well have concluded, and we would agree, that the district court acted too hastily in concluding that

Smith's affidavit raised no factual question concerning the existence of a contract. In determining the existence of a disputed issue of material fact on motion for summary judgment, a district court should resolve all inferences, doubts and issues of credibility against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114, 121, 17 A. L.R.3d 998 (3d Cir. 1966). Despite the liberalization of F.R.Civ.P. 56 in 1963 to permit increased freedom to trial courts to grant summary judgments, it is improper to deprive a party of a full hearing on the merits unless it is clear on the undisputed facts before the court that no material issue of fact has still to be resolved.

The district court's close scrutiny of Smith's affidavit in the initial proceedings went too far in construing its contents in favor of the appellant. While we hesitate to conclude that it would never be proper for a district court to pierce through hazy language and construe an affidavit against the affiant, summary judgment should not be entered if the affidavit reveals that there are disputed material issues of fact. Judge McLaughlin apparently concluded that the affidavits disclosed important issues of fact concerning the existence of a contract at the time appellees were discharged.

■■ While the doctrine of res judicata is meant to foster judicial efficiency and protect defendants from the oppression of repeated litigation, it should not be applied inflexibly to deny justice. The right of an employee to sue under Section 301 for the enforcement of his contractual rights is an important element of the policy of the federal labor laws to protect the integrity of labor contracts. Smith v. Evening News Ass'n., 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Price v. International Brotherhood of Teamsters, 457 F. 2d 605 (3d Cir. 1972). Limiting Judge Rosenberg's decision to the precise issue

on which he originally disposed of the case—preemption by the NLRB—not only assures that justice is done but also fosters the predominant federal concern of enforcing the labor laws. *cf.* NLRB v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); Desrosiers v. American Cyanamid Co., 377 F.2d 864, 871 (2d Cir. 1967). Judge McLaughlin, therefore, properly resolved the ambiguity in the scope of that decision in favor of appellees.

Appellant's second contention is that, generally, employees must exhaust available grievance and arbitration machinery before they can resort to the judicial remedy provided by Section 301. Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). It argues that appellees presented no proof in the jury trial of such efforts sufficient to satisfy their general burden under *Republic Steel*, and that the district court's charge to the jury on the issue was confusing. We do not agree.

■ While the *Republic Steel* case sets forth a general requirement for employees to utilize private dispute settlement mechanisms embodied in their contracts, it noted that there were likely to be exceptions to this rule that might develop in later cases. *Id.*, at 652–53, at 614 of 85 S.Ct. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), recognized that when the grievance and arbitration machinery is controlled by the union and the employer, their actions may make it impossible for an individual employee to resolve his dispute without resort to the courts. The Court concluded that if either the employer has repudiated the contract, *Id.*, at 185, at 914 of 87 S.Ct., or the union has arbitrarily and wrongfully refused to prosecute the grievance, *Id.*, at 185–86, at 914 of 87 S.Ct., the employee may seek judicial relief. Even the mere perfunctory handling of a grievance by a union might be sufficient basis for a finding of a breach of the duty of fair representation that would excuse exhaustion of grievance procedures and arbitration. *Id.*, at 194, at 918 of 87 S.Ct. *Accord,* De Arroyo v. Sindicato, 425 F.2d 281 (1st Cir. 1970).

■ Another exception, or perhaps a reformulation of the exceptions in *Vaca*, was set out in Glover v. St. Louis-San Francisco R. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). Negro employees of the railroad contended that the union and management had combined to prevent the promotion of Negroes, ignoring their rights as set out in the contract. The Court concluded "[i]f that is true, insistence that petitioners exhaust the remedies administered by the union and the railroad would only serve to prolong the deprivation of rights to which these petitioners according to their allegations are justly and legally entitled." *Id.*, at 329, at 552 of 89 S.Ct. Therefore, when resort to arbitration would be futile, the employees need not exhaust the arbitration procedures before seeking relief in the courts. *Accord,* Derr v. Bright, 297 F.Supp. 12 (M.D.Pa.1969).

In sum, there are three exceptions to the requirement that employees exhaust the arbitration procedures in their labor contract before coming to court: (1) employer repudiation of the contract and the attendant dispute settlement procedure; (2) arbitrary refusal or perfunctory handling of a grievance by a union; and (3) circumstances which would make arbitration futile.

■ There was sufficient evidence in the record of this case to justify a finding that one of the exceptions had been met. The appellees testified that they had filed a grievance with the union and attempted to use the arbitration provisions of the 1969 contract without success. The appellant freely admitted that it had always contended that no contract was in existence at the time, although it argued that it had never refused arbitration as to the existence of the contract and the appropriateness of the dismissals.

The jury resolved the dispute in favor of appellees after a charge from the district court which correctly restated the rule of *Republic Steel* and the exceptions of *Vaca* and *Glover*. Judge Weis instructed the jury that in answering the special interrogatory concerning appellees' good faith attempt to exhaust arbitration they should know that:

As a general rule, in this type of case, individual employees wishing to assert contract grievances must attempt the use of the grievance procedure agreed upon by the employer and the Union as a method of settling their differences. If, however, the employees were prevented from exhausting the grievance and arbitration provisions of the contract by the Union's wrongful refusal to process their claim, or if you find that the conduct of the Defendant Company amounts to a denial or repudiation of the contract, then you may find that it would have been useless for the employees to insist upon the grievance procedure as set out in the contract. . . .

Appellant's counsel was not satisfied with this charge and asked for a further instruction directing the jury to consider whether Smith and his co-parties had abandoned their grievance. Judge Weis rejected the form of the requested instruction, but he did give the substance of appellant's suggestion.

Appellant finally contends that once the jury found that a contract existed, the matter should have been returned to an arbitrator for a decision on whether the dismissals were in violation of the contract. Although there is a general policy in favor of arbitration in labor disputes, United Steelworkers v. Warrior & Gulf Navigation, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), once courts take jurisdiction of a case, they should not be compelled to fragmentize it, deciding some of the issues and leaving others for disposition by an arbitrator. Vaca v. Sipes, supra, at 196, at 919 of 87 S.Ct. At times, it may be appropriate for a court to decide nothing more than the existence or non-existence of the contract. In other instances, judicial efficiency and the inter-relation of the various issues may make it appropriate for the district court to resolve all issues of fact and law. This is especially apt when, as here, the testimony pertaining to the existence of the contract necessarily encompassed details involving the termination of appellees' employment. Justice would be frustrated if we compelled the appellees now to seek arbitration after extensive and protracted litigation in the state and federal courts. The issue of the propriety of the dismissals was fully litigated by appellant in the district court. Appellant agreed to special interrogatory No. 2 which asked the jury for a specific finding on the validity of the dismissals. Another hearing on the issue before an arbitrator would, under the circumstances, be indefensible.

The judgment of the district court will be affirmed.