**Dr. Ricardo CABARGA–CRUZ, Plaintiff,**

v.

**FUNDACION EDUCATIVA ANA G. MENDEZ, INC., Defendant.**

No. Civ. 79–2507CC.

United States District Court, D. Puerto Rico.

May 30, 1985.

Teresa M. Lube-de-Bothwell, Hato Rey, Puerto Rico, for plaintiff.

A.J. Amadeo-Murga, Hato Rey, Puerto Rico, for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action that was removed from the Commonwealth Courts by defendant Fundación Educativa Ana G. Méndez, Inc., owner and administrator of a junior college, on October 24, 1979 stating as grounds for removal that the complaint charged a violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185. The 301 violation charged has to do with the demotion of plaintiff, a college professor, from a permanent employee to a temporary one and the refusal to rehire him in alleged violation of the employment contract between the parties. According to the pleadings, this contract included the "statutes and regulations and/or Faculty Manual" and "Article VII of the Collective Bargaining Agreement existing for the years 1977 to 1978 between the Fundación and the Asociación de Maestros Universitarios." Plaintiff moved to remand suggesting that he could amend the complaint to delete the reference to the collective bargaining agreement. He claimed that his action was not for violation of a collective bargaining contract, although some incidental references were made, or of a federal substantive law but, rather, one seeking compliance of contractual obligations assumed, not under a col-

lective bargaining contract but pursuant to regulations and statutes of the Puerto Rico Junior College. This was denied on January 23, 1980 on grounds that a party may not amend a complaint to defeat jurisdiction that existed at the time of removal. On October 30, 1980, this ruling was reaffirmed in an Opinion and Order. On that same date the Court denied a pending motion for summary judgment filed by defendant because there were material issues of fact related to plaintiff's employment classification, whether he exhausted the remedies provided by the labor contract and whether he was entitled to pursue an action in tort against his employer for an alleged illegal retention of part of his salary.[1] A pretrial conference was held on April 26, 1982, several evidentiary objections were raised and the parties were allowed to file memoranda of law on these matters. The case was to be set for trial. On July 12, 1982, however, defendant filed a second motion for summary judgment essentially contending that plaintiff's grievance had not been exhausted and that he had not alleged unfair representation or any other situation that could justify departing from the exhaustion requirement. On July 26, 1982 plaintiff filed his opposition supported by sworn statements alleging that the employer's conduct constituted a repudiation of the grievance procedures it was now claiming he had to exhaust and made reference to the duty of fair representation. On March 24, 1983 plaintiff filed a motion for summary judgment urging that it was undisputed that defendant's termination of his employment and the change in his classification were done in violation of the employment contract which included the collective bargaining agreement but that the exhaustion issue was not material. As to this, plaintiff claims that he had contractual rights under the faculty rules which existed before the collective bargaining agreement was adopted and,

thus, the regulations and the rights derived therefrom, which did not provide a grievance procedure, were in force after the labor agreement was repudiated by defendant. He cites an Opinion and Order of the Superior Court of Puerto Rico, San Juan Part, issued on April 29, 1982 in *Arsenio E. Pérez, etc., v. Fundación Educativa Ana G. Méndez*, in which this conclusion was reached. Defendant replied again raising the classification of plaintiff's employment and the exhaustion requirement but this time admitted that there were issues of fact as to these matters which precluded the request for summary judgment. On December 12, 1983 defendant requested leave to amend its answer to include the defense of statute of limitations since the Supreme Court had decided in June 1983 *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) which held that the six month limitations period in Section 10(b) of the National Labor Relations Act governs claims against both the employer and the union. Following this reasoning it filed a dismissal motion because the complaint was filed on October 24, 1979, more than six months after plaintiff's last day of work on December 22, 1978. Plaintiff argued that the limitations defense had been waived, that *DelCostello* should not be applied retroactively and that an amendment would require additional discovery and delay to explore the issues of fact as to the applicability of the period established in *DelCostello* to this case. He requested that, if the limitations period were found to apply, the case be remanded to the Commonwealth court. Defendant relied on *Graves v. Smith's Transfer Corporation*, 736 F.2d 819 (1st Cir.1984) which establishes that the *DelCostello* period should apply retroactively. It justified the delay in raising the defense arguing that it could not advance an affirmative defense of time limitation prior to *DelCostello*.[2]

---

1. Defendant contends this was due to an overpayment and has counterclaimed for additional amounts supposedly owed by plaintiff.

2. Defendant argues that it did not include a limitations defense in its answer due to the state of the law at the time. It also forgot to include the defense of laches in its answer, available at that time, and had to introduce it later by way

■ We do not doubt that defendant's belated motion for summary judgment was unwarranted given the previous rulings on these matters and the advanced stage of the litigation when it was filed.[3] In the ordinary course of events we would not hesitate to impose sanctions on the party or attorney who delays proceedings through abuse of the rules. However, given the unusual sojourn of this case among the judges of this Court and plaintiff's own summary judgment motion, factors which undoubtedly have also contributed to the delay, no sanctions will be imposed at this time. The parties and their attorneys are warned that further conduct of this nature will be severely sanctioned.

Although the fact that both parties have revealed the existence of material issues of fact and the absence of any factual development requiring a reexamination of prior rulings would ordinarily suffice to deny without further explanation these motions, given the inordinate amount of time already consumed by this case and the inability of the parties to focus on the significant factual and legal issues plus the additional questions raised by the petition to amend, we shall elaborate on the principal controversies with the hope that they will be defined before the trial.

■ It should first be noted that defendant's contention that Cabarga should also have sued his union for unfair representa-tion in order for the claim against the employer to survive the exhaustion requirement, is not supported by the caselaw. The factual context of the outcome of plaintiff's grievance has not changed since our October 1980 ruling denying defendant's first motion for summary judgment because there were genuine issues of fact on this matter. Any determination on whether plaintiff exhausted his collective bargaining agreement remedies or whether he had to exhaust them, given defendant's alleged conduct, is an issue that requires an evidentiary hearing. It is well settled in the federal common law of labor relations that exhaustion of the procedures provided by a private labor relations agreement is not required when the employer's act amounts to a "repudiation of the contract and the attendant dispute settlement proce-dure." *Smith v. Pittsburgh Gage and Supply Company,* 464 F.2d 870, 875 (3rd Cir.1972). In addition, exhaustion is not required when resort to it would be futile, when the union has arbitrarily refused to file a grievance or when it has handled it perfunctorily. *Id.*

■ Some of the exceptions to the exhaustion requirement involve the union and the resulting unfair representation claim and others involve the employer and a breach of contract claim. This case is essentially a breach of contract, Section 301

___

of its first motion for summary judgment. This argument also fails to explain convincingly its silence on this matter during the years before June 1983 when the law was in flux. As the Circuit Court pointed out in *Graves:*

> We do not agree that *DelCostello* erupted from the Supreme Court firmament like a bolt out of the blue. *Mitchell* [referring to *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)] carried within it three clear portents of a change to come....

*Id.* at 821. The foresight on the development of the law required of litigants in the retroactivity analysis is equally applicable to those who would justify a late amendment to pleadings on the need to incorporate a recent legal development or change. They should at least be diligent in detecting the possibility of change in the law so as to minimize the hardship and prejudice on the other parties that a late amendment

will cause. *Cf. Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1155 (2d Cir.1968) ("It seems to require little argument that where the party seeking to amend wishes to raise a defense of limitations long after the answer was first filed, a court would be remiss if it did not carefully balance the effects of such action for it is manifest that risk of substantial prejudice increases in proportion to the length of defendant's delay in seeking the amendment ... the party wishing to raise the defense is obliged to plead the Statute of Limitations at the earliest possible moment. Certainty of success is not an essential element in determining whether to set forth the affirmative defense in a pleading. If the defense lurks in the case, vacillation can cause the other party irreparable injury.")

3. This case was transferred from our docket in September 1982 and reassigned on October 1, 1984.

suit brought directly against the employer. There was no need to make an unfair representation claim against the union. If defendant felt that the union was responsible for plaintiff's employment difficulties it should have brought it to the case. The record reveals, however, that defendant *withdrew* its defense that the union should be held accountable to plaintiff. This new posture, in any event, is not supported by the applicable caselaw. See: *id.* and *gen. Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Hayes v. New England Millwork Distributors, Inc.,* 602 F.2d 15 (1st Cir.1979).

■ On the principal issues, it is first necessary to clarify the temporary/permanent classification given to plaintiff's employment which appears to be the focus of remaining issues. Plaintiff's employment has been described in a haphazard way. The terminology loosely used by the parties throughout their discussion of the employment classification is misleading. A better approach would require a review of the classifications of employment contained in those documents which allegedly form part of plaintiff's employment contract.[4] These documents establish that the professors that defendant may hire can fall in different categories. One of these is the "temporary lecturer" with no rights under either the CBA or the regulations. CBA, Article IX, *Handbook* at p. 53. Temporary lecturers are defined by the regulations as professors assigned a part-time program for whom compensation was determined according to the number of hours taught.

These "lecturers" are not considered part of the classified teaching personnel and are given special contracts, depending on defendant's needs. *Id.*[5] On the other hand, an "instructor" is defined as a professor that carries a full program of classes or its equivalent in duties. *Handbook* at p. 44. The type of contract to which these "full program instructors" may be entitled to are either: a) a nine-month contract (August 23–May 31), b) a ten-month contract (August-May plus one summer session) or c) a twelve-month contract with a one-month vacation. *Id.* at 38.[6] These contracts are awarded depending on the instructor's years of service to defendant's institution. *Id.* "Instructors" have also many fringe benefits such as retirement, life and medical insurance, refund of expenses for educational travels and continued education. *Id.* at 39–41. They also have certain notification, rehiring and termination of employment rights. If defendant does not intend to reappoint a faculty member he shall be so notified no later than thirty (30) days before the end of the term of employment. *Statutes,* Article V Section 30, *Handbook* at p. 41. If during the first year of service the instructor performs satisfactorily, the contract will be renewed. *Handbook,* at p. 44. Members of the faculty (instructors) serve for the first two years on a probation basis and are then evaluated to determine if promotion is warranted. *Handbook,* at 42; *Statutes,* Article VIII, Section 3. A favorable evaluation of these first two years is necessary in order to continue the classification steps provided by defendant. Thereafter, the in-

4. We are referring to the collective bargaining agreement between defendant and the Asociación de Maestros Universitarios (CBA), the Statutes of the Puerto Rico Junior College (Statutes) and the Faculty Handbook of the Puerto Rico Junior College (Handbook). It should be noted that none of these documents has been submitted in its entirety and that we are referring in this opinion to photocopies of extracts provided by the parties. There also appear to be two editions of the rules covering different years.

5. The CBA's Article IX states that defendant has "the right to appoint temporary personnel to cover those necessities of the service that would arise for a short term, not more than an academic semester. The personnel so appointed shall not be covered by the provisions of this agreement." Article VIII, Section 1 of the CBA indicates that all new teachers should receive a nine-month appointment the first year, and a ten-month appointment the second year, except those appointed for a semester or less as temporary or substitute employees.

6. It should be noted that there is some variance between the copies of the Statutes and Handbook provided by defendant and those copies provided by plaintiff since they refer to different editions.

structor "will receive annual contracts that will be renewed during three consecutive years, as long as the instructor keeps on performing satisfactorily the duties of his position." *Handbook* at p. 44. After five years of service the instructor is again evaluated, this time to determine if permanency (tenure) is awarded. *Handbook*, at 45; *Statutes*, Article V Section 32. An instructor with permanency is one with at least a master's degree and five years of satisfactory service. The next step in the teacher classification is that of Associate Professor which requires at least one year as permanent instructor and, finally, professor which requires at least three years as associate professor, ten years of university level teaching and a favorable evaluation. Thus, the crucial determination to be made in this case is whether plaintiff was an "instructor" with certain rights of notice before renewal and evaluations upon completion of annual and bi-annual terms of employment or a "temporary lecturer" with no such rights under the contract of employment. The record reveals that the facts necessary to arrive at this determination are still shrouded by controversy.

A comparison of correspondence between plaintiff and defendant and other documents in the record with the employment regulations just mentioned makes one wonder whether defendant was aware of its own regulations when making the employment contracts. The documents which reveal plaintiff's employment relationship with defendant's college institution contain conflicting terminology and conditions which, unless clarified by additional evidence, do not establish either of the parties' positions. In a letter dated March 30, 1976 defendant's President, José F. Méndez, informs plaintiff Cabarga that pursuant to Article VII, Sections 1 and 2 of the CBA, he is naming him "instructor" with a monthly salary of $1,000, effective retroactively to November 1, 1975. In a document called "Requisición de Nombramiento o Contrato" dated June 14, 1976, plaintiff's position is defined as "lecturer," the appointment as "temporary," and compensation is awarded on a monthly basis and for

approximately one month (June 1 to July 1, 1976). On December 2, 1976 another similar letter was sent to plaintiff by defendant's President informing him that pursuant to the CBA he was extending plaintiff an appointment as instructor with a monthly salary of $1,110.00, effective August 23, 1976. Neither in this letter nor in the one dated March 30, 1976 does defendant indicate a date of termination. A memorandum dated May 19, 1977 sent by the Director of the Spanish Institute to defendant's Dean of Academic matters states that plaintiff has performed satisfactorily and recommends him favorably for the next academic year 1977–78. In a document entitled "Request for Verification of Employment" dated November 3, 1977 defendant's Executive Personnel Director says that plaintiff is an instructor and a regular employee. On November 16, 1977 President Méndez, again referring to the CBA, informs plaintiff that he is extending him an appointment as "instructor" but this time adds the word "temporary" and limits the appointment to the period of August 18, 1977 to December 20, 1977 with a monthly salary of $1,100.00. On February 17, 1978 the President informs plaintiff that he is giving him another temporary appointment as instructor for the period of January 23 to May 19, 1978 with a monthly salary of $1,029.00. However, in a memorandum dated May 31, 1978 the Director of defendant's Junior College Spanish Institute again informs the Dean of Academic matters that plaintiff has performed his duties as Spanish instructor satisfactorily and recommends him favorably for the next academic year 1978–79. In a letter-contract dated July 18, 1978 the President extends an appointment to plaintiff as Lecturer on a partial basis for the institution's second summer session of 1978. On October 27, 1978 plaintiff writes to defendant's Personnel Director, Luis Muñoz-Veloso, mentioning the fact that he was assigned only two classes for that year even though he had been a regular professor with twelve-month appointments since the 1976–77 academic year, complaining of a $300.00

reduction in his salary for an alleged excess payment and seeking clarification of these matters. Muñoz-Veloso answered on November 6, 1978 saying that Cabarga had a temporary appointment as instructor for August-December 1977 and another such appointment for the period of January 1978 to May 1978 but the payroll division had erroneously included him in the payroll for the months of June and July 1978 and that plaintiff still owed the overpayment for these months. Plaintiff's next step was to file a grievance with the Asociación de Maestros Universitarios which was never ruled upon by the grievance committee and, eventually, the present civil action.

From these documents it appears that plaintiff's first employment contract with defendant was either a temporary appointment for six months (November 1, 1975 to May 1976) or a sui generis "instructor" appointment for six months instead of the nine month minimum established by the regulations. Or perhaps, the retroactive effect was merely a reference to the date when the CBA became effective, November 1, 1975, and not to the duration of the term of employment whereby plaintiff's first contract would have been on a semester basis (January 1976—May 1976). This seems to be defendant's view as it appears from the sworn statement of its Personnel Director dated November 7, 1979 indicating that plaintiff "was contracted in writing by the institution on an academic semester by academic semester basis from 1976 to 1978, including some summer sessions in between, always classified and designated as temporary lecturer or temporary instructor...." However, this does not reflect with accuracy the correspondence between plaintiff and defendant for the period of August 1976 to November 1977. The December 2, 1976 letter which appoints plaintiff retroactively to August 1976 does not classify his employment as temporary nor does it signal the duration of this appointment. Was this then a nine-month appointment as provided by the regulations entitling plaintiff to certain rights or was this another semester appointment as stated by Mr. Muñoz-Veloso under oath? If it was a semester appointment, why did the Director of defendant's Spanish Institute, presumably plaintiff's immediate supervisor, rate him favorably on May 1977 at the end of the 1976–77 academic year and recommend him favorably for the next academic year 1977–78? Why was plaintiff again evaluated at the end of the 1977–78 academic year and recommended favorably for the next academic year if he was being hired on a semester by semester basis. We have found no requirement for the evaluation of "temporary lecturers" in the regulations and, if one was developed as a matter of practice, the question lingers as to why it was not limited to a semester. Then again why would Muñoz-Veloso sign a document for the Federal National Mortgage Association in which he classifies plaintiff as a regular employee and then state under oath that he was a temporary employee. Given these contradictions it is obvious that the documents do not speak for themselves and that there is some explaining to do in order to understand their true meaning.[7]

The issue of exhaustion of the grievance procedure is closely tied to defining the type of employee that plaintiff was because his status must be established to see if the collective bargaining agreement and its exhaustion requirements apply to him or not. However, even if the agreement were applicable, we would still have to determine whether the exhaustion was necessary given the conduct of defendant described in plaintiff's affidavits which seem to depict an abandonment by the employer of the grievance procedure. Clarification of plaintiff's employment classification is also necessary to determine his contractual rights, even assuming only the Rules and *Handbook* were applicable, as plaintiff contends. There is also the question of the claim of

---

7. Although it could be argued that the proper course for future proceedings given this determination would be to assign it to a labor arbitrator, we believe the particular circumstances of this case render the usual and recommended arbitration preference as an unwise choice to deal with the litigation at this stage. *See: Smith,* 464 F.2d at 876.

illegal retention of salary. Although defendant has not contested this and it appears to be prohibited by Puerto Rico labor laws, *see: P.R.Laws Ann.*, Title 29 Section 175, the extent of the damages caused by this illegal retention of salary is still in controversy. Defendant's crossclaim for overpayment is related not only to the determination of plaintiff's damages resulting from the illegal retention but also to the clarification of his employee status during the alleged period of overpayment. These factual controversies have to be clarified in an evidentiary hearing.[8]

Likewise, it is important to determine the nature of this employment relationship through the years to establish exactly when, if at any time, defendant actually changed plaintiff's employee status. For example, it appears from the President's November 16, 1977 letter that Cabarga's status was changed to a temporary lecturer, starting August 1977. If this were so, assuming the memorandum recommending plaintiff favorably as a one year (9–10 month) employee is discarded, then we would have to inquire whether plaintiff was given the thirty-day notice required by the handbook because his first nine or ten-month appointment was not going to be renewed and he was to be hired on a semester basis. The question of when this alleged violation to plaintiff's employment rights occurred brings us to the other matter raised by the Motion to Amend the Answer to the Complaint and to Dismiss filed December 12, 1983: that the complaint should be dismissed because it is time barred regardless of whether the issues of fact now in controversy are solved in plaintiff's favor.

The timeliness argument is based on *Del- Costello v. International Brotherhood of Teamsters, et al.*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) which holds that, in suits against an employer for breach of a collective bargaining agreement and against a union for unfair repre-

sentation, the applicable statute of limitations is the six month period provided by section 10(b) of the National Labor Relations Act, 29 U.S.C. Section 160(b), for the filing of unfair labor practice charges before the National Labor Relations Board. *DelCostello* solved a long standing dispute among lower federal courts regarding the applicable statute of limitations for "hybrid" Section 301 cases, brought simultaneously against the employer for breach of contract and against the union for unfair representation. It expressly rejected state limitations for vacating arbitration awards which it had adopted only two years before in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). In our case, the introduction of the limitations defense would be a futile endeavor.

*DelCostello* found unsatisfactory the prior practice of borrowing analogous state statutes of limitations for this particular type of labor case. A hybrid 301 unfair representation claim involves a challenge to a consensual process that federal labor law is chiefly designed to promote—the private settlement of disputes under the collective bargaining agreement and, unlike the claim in *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) which comprised only the violation of the contract by the employer, "it has no close analogy in ordinary state law." *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489. The Court concluded that state limitations periods for vacating arbitration awards failed "to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under Section 301 and the fair representation doctrine." That opportunity was provided by Section 10(b) of the National Labor Relations Act which establishes a six-month period for filing charges of unfair labor practices to the National Labor Relations Board. However, the warning was clear

---

**8.** Defendant apparently read into plaintiff's references to due process some sort of civil rights action and has discussed the issue of state action. However, we believe plaintiff himself has admitted that there are no civil rights claims in his complaint and it is based only on breach of a labor law agreement and illegal retention of salary.

that the holding "should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action in labor law or elsewhere." *Id.*, 462 U.S. at 171, 103 S.Ct. at 2294, 76 L.Ed.2d at 493. *DelCostello* does not rule out the adoption of analogous state statutes of limitations for other types of labor cases. *DelCostello* simply chooses between a state limitations period and a federal statute of limitations, namely Section 10(b) of the National Labor Relations Act. The choice is made according to the type of labor dispute. The applicable state limitations rule in *Hoosier* is still considered by the Court in *DelCostello* to have been the right choice in that particular situation because *Hoosier* was a straight forward breach of contract suit under Section 301, not a hybrid Section 301/unfair representation claim as *Mitchell* and *DelCostello*. The practicalities of this particular type of litigation and the fact that it involves the consensual processes protected by federal labor law—the formation of the agreement and the private settlement of disputes under it—made the court turn to federal law and away from state law to borrow the limitations period. This is expressly stated by the Court:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. See, e.g., *Mitchell*, 451 US, at 61, n 3, 67 LEd2d 732, 101 SCt 1559. On the contrary, as the courts have often discovered, there is not always an obvious statelaw choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations period. Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for

interstitial lawmaking, we have not hesitated to turn away from state law.

*DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294, 76 L.Ed.2d at 493.

Reference was also made in *DelCostello* to Justice Stewart's (author of *Hoosier*) concurring opinion in *Mitchell* arguing that "the factors that compelled adoption of state law in Hoosier did not apply to suits under Vaca and Hines...." *Id.* This basic distinction in the application of the period of limitations adopted by *DelCostello* has been made by several circuit courts. In *Derwin v. General Dynamics Corp.*, 719 F.2d 484 (1st Cir.1983) our Circuit rejected the application of the *DelCostello* six-month period to a suit brought by a union to confirm an arbitration award. It read *DelCostello* as applicable only to certain 301 suits and not to the one before it:

> Despite the application of a uniform limitations period to employee suits, the Court's detailed analysis of state limitations period, together with its explicit reliance on *Hoosier*, show that its decision was not intented to weaken the ordinary presumption of state law primacy in resolving section 301 limitations questions.

*Derwin* at p. 487. In *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 167 (2d Cir.1984), the Court declined to apply the *DelCostello* six-month period considering the case to be more akin to an ordinary breach of contract claim. *Id.* It agreed with the district court that the *"DelCostello* holding turns on the particular nature of the duty of fair representation action and cannot reasonably be expanded to all section 301 claims that involve facts which might also have established an unfair labor charge." *Id.* at 168. *See also: Farr v. H.K. Porter Co., Inc.*, 727 F.2d 502, 505 (5th Cir.1984); *United Broth. of Carpenters & Joiners of America, Local 1020 AFL–CIO v. FMC Corp.*, 724 F.2d 815, 817 (9th Cir.1984).

The case before us involves an ordinary breach of contract claim rather than the hybrid variety of *DelCostello*. The complaint contains no claim against a union for

unfair representation. The concerns voiced in *DelCostello* on the need for stability and finality in arbitration and the ensuing disruptive effect that a collateral proceeding against a union for unfair representation might cause are simply not present in this case. The possibly detrimental effect that a long period of limitations may have on these concerns are not as manifest in our type of labor case as it is in the *DelCostello*, hybrid suit. The lack of an arbitration proceeding or award does not place the employee in the advantageous position pointed out in *DelCostello* of having had a specialized forum evaluate and sort out the elements of the unfair labor charge. Rather, the position of the employee here is similar to the *Hoosier* type of unfair labor claim more closely related to an ordinary breach of contract claim and the ensuing longer state period of limitations associated with these claims.

We do not advance which term in Puerto Rico law is the most appropriate for this sort of claim, *compare: P.R.Laws Ann.*, Title 29 Section 246d and Title 31 Section 5297 with *L.R.B. v. P.R. Telephone Co.*, 107 DPR 76 at 79–82 (1978) but simply rule that the six-month term adopted in *DelCostello* satisfactory to the realities of that type of litigation is not suitable to this one.

Accordingly, defendant's Motion to Amend the Answer to the Complaint filed on December 12, 1983 is DENIED for the amendment to include the limitations defense would be futile. *See: Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3rd Cir. 1983) *cert. denied*, —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314; *Vargas v. McNamara*, 608 F.2d 15 (1st Cir.1979).

Defendant's Motion for Summary Judgment of July 12, 1982 and Motion to Dismiss of December 12, 1983 are hereby DENIED. Plaintiff's Motion for Summary Judgment of March 24, 1983 is also DENIED.

SO ORDERED.