Donald WOODS and Diane Woods, ON BEHALF OF their daughter T.W., Plaintiffs,

v.

NEW JERSEY DEPARTMENT OF EDUCATION; New Jersey Department of Human Services, Division of Developmental Disabilities; New Jersey Department of Human Services, Division of Youth and Family Services; Monroe Township Board of Education, Defendants.

Civ. A. No. 91–4250.

United States District Court, D. New Jersey.

June 19, 1992.

Rebecca K. Spar, Cole, Schotz, Berstein, Meisel & Forman, Hackensack, N.J., for plaintiffs.

Robert J. Del Tufo, Atty. Gen., James T. Hill, Deputy Atty. Gen., of New Jersey, Trenton, N.J., for New Jersey Dept. of Educ. and New Jersey Dept. of Human Services defendants.

Richard J. Kaplow, Brian C. Darreff, Weinberg and Kaplow, Springfield, N.J., for defendant Monroe Tp. Bd. of Educ.

## OPINION

BROTMAN, District Judge.

Plaintiffs Donald and Diane Woods bring this action on behalf of their daughter,

T.W., alleging that various state and local agencies in New Jersey violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, formerly the Education of the Handicapped Act ("EHA"), and 42 U.S.C. § 1983 by failing, *inter alia*, to fund the residential portion of T.W.'s placement in an out-of-state residential education facility.

Presently before the court are the following motions: 1) the motion of the Woods for default judgment and for partial summary judgment against the defendant New Jersey Department of Education ("NJDOE"); 2) the cross motion of defendants NJDOE, New Jersey Department of Human Services, Division of Youth and Family Services ("DYFS") and Division of Developmental Disabilities ("DDD") for summary judgment; and 3) the cross motion of defendant Monroe Township Board of Education ("Monroe School Board") to dismiss.

## I. FACTS AND PROCEDURE

T.W., age nineteen, has a range of disabilities including communication and learning problems and emotional problems indicative of Obsessive Compulsive Disorder. In September, 1990, the Woods requested a Due Process hearing with the NJDOE to challenge the Monroe School Board's decision to place T.W. in a daytime education facility, the Hampton School in Burlington County, New Jersey, while she resided with her parents. The Woods wanted to have their daughter placed in a residential education facility. On September 27, 1991, NJDOE requested that the New Jersey Office of Administrative Law assign an Administrative Law Judge ("ALJ") to conduct a hearing.

After several prehearing conferences and several days of testimony before the ALJ on the issue of whether a residential placement was educationally necessary for T.W., the Woods entered into a Stipulation of Settlement with the Monroe School Board on April 1, 1991. By its terms, the Monroe School Board agreed to place T.W. at a residential education facility, the Pathway School, located in Jeffersonville, Pennsylvania, for a period of nine months, until January 1, 1992. In consideration of the Woods agreeing to make no further demands for placement or compensatory education from the Monroe School Board, the Monroe School Board agreed to pay for the costs of the Pathway School for nine months.[1] The ALJ approved the Stipulation of Settlement on May 9, 1991, stated that the settlement was voluntary, fully disposes of all issues in controversy and is consistent with the law. The ALJ ordered that the parties comply with its terms and also held that his decision approving the Stipulation of Settlement is final pursuant to 20 U.S.C. § 1415(e)(1), and is appealable by bringing a civil action in a Superior Court of New Jersey or in a District Court of the United States.

---

1. The Settlement Agreement states in relevant part that:

    1. T.W. shall be placed by [the Monroe School Board] at the Pathway School for a period of nine months commencing no later than April 1, 1991....

    2. In consideration of the aforesaid placement, [the Woods] agree that they will make no further demand for funding of residential placement or for compensatory education of any kind upon [the Monroe School Board].

    3. It is agreed that at the end of the residential placement provided for in paragraph 1, [the Monroe School Board] shall perform a reassessment of T.W., and shall provide an educationally appropriate day placement within a reasonable travel distance from [the Woods'] residence to continue until the completion of T.W.'s 21st year.

    4. During the period of residential placement at Pathway School, [the Woods] shall pursue their pending appeal procedures with DYFS, DDD or any other mental health agency, and [the Monroe School Board] agrees to cooperate with [the Woods] appeal including providing testimony, if necessary upon request.

    5. In the event that [the Woods] prevail in their pending appeal and obtain approval by DYFS, DDD or any other health agency to fund the residential portion of a year round placement for T.W., then in that event, [the Monroe School Board] agrees to fund the educational portion of such residential placement only, until the completion of T.W.'s 21st year.

    6. [The Woods] understand that by entering into this agreement they are giving up their right to seek residential placement from the [Monroe School Board] except as provided herein.

At the same time that the Woods were challenging the decision of the Monroe School Board, they also requested and were granted an Interdivisional Review with the New Jersey Department of Human Services. The reason for this request was to challenge the decision of the DYFS denying their application for funding the residential portion of T.W.'s placement at the Pathway School and the decision of the DDD denying their application for "functional services" relating to the education, training and care of the mentally retarded. *See* N.J.S.A. 30:4–25.1.

The Interdivisional Review Team made findings and recommendations. Among these including the finding that T.W. was eligible for the DDD's "functional services" based on DDD's re-evaluation of her. In addition, the Interdivisional Review Team found that T.W. was not eligible for DYFS residential funding for her placement at the Pathway School since her placement at the Pathway School was made solely for educational reasons. As a result, the Interdivisional Review Team found that it was the Monroe School Board's responsibility to fully fund that placement.

On September 25, 1991, William Waldman, Deputy Commissioner of the New Jersey Department of Human Services rendered a final decision in this matter on behalf of the Department. It upheld DDD's decision that T.W. is eligible for "functional services" based on the DDD's re-evaluation of her. It also upheld DYFS's decision finding T.W. ineligible for funds for the residential portion of her placement at the Pathway School.

On September 24, 1991, the Woods filed the complaint in this case. In the complaint, the Woods contend that NJDOE, DDD and DYFS violated their duty of care toward T.W. by failing to provide her with an appropriate program and placement. They also contend that DYFS approved of residential funding for T.W., then lied by stating that no such approval occurred and that NJDOE is required to coordinate the services of all agencies who provide special education to T.W., but failed to do so. In addition, the Woods contend that through-

out the twelve year enrollment of T.W. in the Monroe Township public school system, the Monroe School Board never provided them with information concerning their rights as parents of a handicapped child.

The Woods seek residential funding from DYFS and DDD for the Pathway School beginning in January, 1992. They also seek $605,000.00 in order to restore to T.W. the eleven years she was denied "a free and appropriate education" from NJDOE, DYFS and DDD and punitive damages from the Monroe School Board.

The Monroe School Board filed an answer to the complaint on October 15, 1991. In its answer, the Monroe School Board argues that the Woods are barred as a matter of law from proceeding with this claim against it as a result of having entered into the Stipulation of Settlement. New Jersey Attorney General Robert Del Tufo and Deputy Attorney General James Hill represent NJDOE, DYFS and DDD. On October 29, 1991, Del Tufo and Hill filed an answer on behalf of the New Jersey Department of Human Services [2] after being granted an extension of time to answer. On December 18, 1991, Del Tufo and Hill filed an amended answer on behalf of the New Jersey Department of Human Services and NJDOE contending that he inadvertently omitted NJDOE in his original answer. The NJDOE was served with the complaint on September 27, 1991.

On December 12, 1991, the Woods filed a request for emergency relief with the ALJ pursuant to N.J.A.C. 1:6A–12.1. The Woods sought an order keeping T.W. at the Pathway School after January 1, 1992. On January 7, 1992, the ALJ granted the requested relief and ordered that T.W. remain at the Pathway School in a residential placement paid for by the Monroe School Board until the Monroe School Board and the Woods agreed on an appropriate day placement.

## II. DISCUSSION

### a) Woods' Motion for Default Judgment

The Woods argue that although the NJDOE was served with the complaint on

**2.** DYFS and DDD were divisions within the New Jersey Department of Human Services.

September 27, 1991, it failed to answer within twenty days pursuant to Fed. R.Civ.P. 12(a) or apply for a timely extension pursuant to N.J.Fed.Prac.R. 13. As a result, the Woods argue that default judgment should be entered against NJDOE.

▇ In *Boring v. Kozakiewicz*, 833 F.2d 468 (3d Cir.1987), the Third Circuit affirmed the trial court's ruling that an answer filed on behalf of a co-defendant will suffice to serve as an answer for a defendant who is represented by the same counsel and when the answer specifically responded to a paragraph in the complaint relating only to that defendant. *Id.* at 470; *accord Mareno v. Rowe*, 910 F.2d 1043, 1045 (2d Cir.1990); *see also* Fed.R.Civ.P. 8(f) ("All pleadings shall be construed as to do substantial justice").

In Del Tufo's and Hill's answer filed on behalf the New Jersey Department of Human Services on October 29, 1991, they specifically responded to the allegations in Paragraph 6 of the complaint which related only to NJDOE.[3] They also responded to allegations 2–4 of the complaint relating to both NJDOE and the Monroe School Board, but not to the other state agency defendants, by denying them "as to the State."[4] In the December 18, 1991 amended answer, all responses to the allegations in the complaint and all the affirmative defenses remained the same. The December 18, 1991 amended answer only differed from the October 29, 1991 answer in that it named NJDOE as a defendant.[5] Moreover, at all times, Del Tufo and Hill were representing all three New Jersey state defendants, NJDOE, DYFS and DDD.

Under these circumstances, the court finds that the October 29, 1991 answer was also filed on behalf of NJDOE as well as DYFS and DDD. The Woods motion for default judgment against NJDOE is denied.

### b) *Woods' Motion for Partial Summary Judgement*

The Woods argue that NJDOE is the agency responsible for the coordination of all funding sources for handicapped children in New Jersey. Consequently, the Woods argue that partial summary judgment should be granted against NJDOE[6] to develop an appropriate plan to fund the residential component of T.W.'s placement, and for compensatory damages.

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789

---

**3.** Paragraph 6 of the complaint states "[NJDOE] is required to coordinate the services of all agencies who provide special education or related services to [Tracy], but failed to do so." The October 29, 1991 answer stated that this allegation is denied.

**4.** Paragraph 2 of the complaint states "[t]he failure of the [Monroe School Board] and [NJDOE] to effectively monitor the programs for and the handicapping condition of T.W. provided the proximate cause for her repeated attempts at suicide, as well as her lack of educational growth through the remediation of her handicap." Paragraph 3 of the complaint states "[t]he failure of the [Monroe School Board] and NJDOE to require and utilize comprehensive language testing resulted in misclassification, misdiagnosis, inappropriate educational programming, and improper provision of related services for T.W. throughout her entire 12 years of schooling." Paragraph 4 of the complaint states "[t]he negligence of [NJDOE] and the [Monroe School Board] has irreparably harmed

T.W. resulting in her inability to become self-sufficient and independent, and to be able to support herself financially in years to come. To all three of these paragraphs and the allegation contained therein, the October 29, 1991 answer stated "[d]enied as to the State."

**5.** Together with submitting their December 18, 1991 amended answer, Del Tufo and Hill informed the Clerk of the District Court by letter December 17, 1991 that they inadvertently omitted NJDOE as a State defendant and that otherwise, the answer remains the same.

**6.** In their reply brief, the Woods contend that their motion for partial summary judgment is also brought against DYFS and DDD. Since in their original brief, the Woods only moved for partial summary judgment against NJDOE, and this is what the State defendant's responded to in their opposition brief, the court will only consider the Woods' argument for partial summary judgment as it applies to NJDOE.

F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

▪ Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

▪ NJDOE is responsible for assuring that all educational programs for children with disabilities within New Jersey shall meet NJDOE education standards and shall be under the general supervision of NJDOE so that a free appropriate public education[7] for children with disabilities shall be provided for every disabled child. 20 U.S.C. §§ 1412(2)(B), 1412(6). In *Kruelle v. New Castle County School District*, 642 F.2d 687 (3d Cir.1981), the Third Circuit held that the district court did not err in holding the Delaware State Board of Education responsible for providing a residential placement for a disabled child. *Id.* at 696–698. However, the Third Circuit first had to make the determination that the district court did not err in finding that a disabled child's current day placement failed to meet the standards of a free appropriate public education. *Id.* 693–696.

▪ At this stage, the court is not asked to determine whether T.W.'s residential placement at the Pathway School is necessary in order to meet the standards of a free appropriate public education. Rather, the Woods would have the court order NJDOE to develop an appropriate plan to fund T.W.'s residential placement without making this determination. Moreover, the court cannot determine whether residential placement is required under the IDEA since the parties have not presented evidence on this issue.[8] If, after trial, the

7. "Free appropriate public education" is defined as "special education and related services that have been provided at public expense, under public supervision and direction, and without charge...." 20 U.S.C. § 1401(a)(18). "Special education" is defined as "specially designed instruction, at no costs to parents or guardians, to meet the unique needs of a child with a disability, including instruction conducted in a classroom, in the home, in hospitals and institutions, and in other settings and instruction in physical education." 20 U.S.C. § 1401(a)(16). "Related services" is defined as "transportation, and such developmental, corrective, and other supportive services ... as may be required to assist a child with a disability to benefit from special edu-

cation, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(a)(17).

8. There are a variety of factors under the IDEA that the court must take into account in determining whether residential placement is required including placement of the disabled child in the least restrictive environment so that the child is educated with children without disabilities unless "the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(5)(B); *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 597–598, 98 L.Ed.2d 686 (1988). The

court determines that residential placement for T.W. is required to meet the standards of a free appropriate public education, then it can determine NJDOE's responsibility with respect to such placement. *See Board of Education of East Windsor Regional School District v. Diamond,* 808 F.2d 987, 990 (3d Cir.1986).

■ Similarly, the court has no evidence to determine whether the NJDOE has denied T.W. a free and appropriate public education for eleven years in order to assess compensatory damages. The Woods motion for partial summary judgement against NJDOE is denied.

### c) NJDOE's, DYFS's and DDD's Cross Motion for Summary Judgment

NJDOE maintains that it should be dismissed as a defendant since the Woods have not exhausted their administrative remedies with respect to the Stipulation of Settlement approved by the ALJ.

■ 20 U.S.C. § 1415(e)(2) provides that a party aggrieved by the findings and decision made in a Due Process hearing by the state educational agency, or by a local or intermediate educational agency where no right of appeal to the state educational agency exists, shall have the right to appeal the matter to a United States District Court regardless of the amount of controversy. *Lester H. By Octavia P. v. Gilhool,* 916 F.2d 865, 869 (3d Cir.1990); *see also* 20 U.S.C. § 1415(f). New Jersey permits parents to request a Due Process hearing. N.J.A.C. 6:28–2.7(b). A request is made with NJDOE which reviews it and forwards it to Office of Administrative Law to be assigned to an ALJ if a settlement cannot be reached. N.J.A.C. 1:6A–4.2(d); N.J.A.C. 6:28–2.7(e). The decision of the ALJ is final and appealable to a United States District Court pursuant to 20 U.S.C. § 1415(e)(2). N.J.A.C. 1:6A–18.3(a); N.J.A.C. 6:28–2.7(g).

■ The Woods have exhausted their administrative remedies and NJDOE will not be dismissed. NJDOE admits that the Due

court is also afforded the opportunity to receive the records of the administrative proceeding

Process hearing was conducted pursuant to the regulations of the New Jersey Administrative Code. The ALJ also clearly stated in his May 9, 1991 decision approving the Stipulation of Settlement, that the decision was final and appealable to a United States District Court. Moreover, with respect to the terms of the Stipulation of Settlement relating to the pending appeal against DYFS and DDD, the Woods exhausted their administrative remedies with the New Jersey Department of Human Services.

NJDOE, DYFS and DDD also contend that if T.W. requires residential placement, it is the responsibility of the Monroe School Board to pay for the total costs of such placement. Consequently, all three of these defendants argue that they should be dismissed from this lawsuit. Since the Woods are not seeking direct residential funding from NJDOE, but only that it develop an appropriate plan to fund T.W.'s placement, the court will only consider this ground for dismissal as it relates to DYFS and DDD.

■ The New Jersey Administrative Code provides guidance for determining what agency is responsible for funding the residential costs of placement. Pursuant to N.J.A.C. 6:28–7.4(b)(4):

> When a district board of education is able to demonstrate to the Department of Education ... that the individualized education program of an educationally handicapped pupil cannot be provided by a public program or private day school program, the pupil may be placed in an approved residential private school which shall be at no cost to the parent(s). The district board of education shall be responsible for special education costs, room and board.

*Accord* 20 U.S.C. § 1413(a)(4)(B)i. However, N.J.A.C. 6;28–7.4(b)(5) provides:

> Placement of an educationally handicapped pupil in an approved residential private school by a public agency, other than the district board of education, shall be subject to the rules governing such

and hear additional evidence at the request of a party pursuant to 20 U.S.C. § 1415(e)(2).

agencies and to this chapter. The district board of education shall pay the nonresidential special education costs.

*Accord* 20 U.S.C. § 1412(6) (the responsibilities of agencies other that educational agencies to provide or pay for some or all the costs of a free appropriate public education shall not be limited by the responsibility of the state educational agency under the IDEA).

In order to determine if the Monroe School Board is responsible for paying the total costs of T.W.'s placement, the court must first determine whether her placement at the Pathway School is necessary for educational purposes. As the Third Circuit stated in *Kruelle*, "[a]nalysis must focus ... on whether full-time placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social or emotional problems that are segregable from the learning process." *Kruelle* at 693; *accord Brown v. Wilson County School Board*, 747 F.Supp. 436, 441–445 (M.D.Tenn.1990); *B.G. By F.G. v. Cranford Board of Education*, 702 F.Supp. 1140, 1156–1157 (D.N.J.1988); *McKenzie v. Smith*, 771 F.2d 1527, 1534–1535 (D.C.Cir. 1985). Since at this time the court cannot determine whether a residential placement is necessary to provide T.W. with a free appropriate public education, DYFS and DDD will not be dismissed as parties to this lawsuit.

#### d) Monroe School Board's Cross Motion To Dismiss [9]

The Monroe School Board contends that it must be dismissed as a matter of law on the grounds that the court lacks subject matter jurisdiction and the Woods are barred from bringing this lawsuit by the terms of the Stipulation of Settlement. It argues that for this court to have subject matter jurisdiction, a party must be "aggrieved by the findings and decision" of the ALJ in the Due Process hearing. 20 U.S.C. § 1415(e)(2). It further contends that since

the Woods settled their claims with it, the Woods failed to obtain specific administrative findings and a final decision, and cannot be considered to be parties "aggrieved by the findings and decision" of the ALJ.

In order for a United States District Court to have subject matter jurisdiction pursuant to 20 U.S.C. § 1415(e)(2)., a final decision must be rendered in the administrative process. 20 U.S.C. § 1415(e)(1). Not only does the ALJ in his May 9, 1991 decision approving the Stipulation of Settlement state that the decision is final pursuant to 20 U.S.C. § 1415(e)(1) and appealable to this court, but makes the specific finding that the settlement disposes of all issues in controversy and is consistent with the law. The Woods can appeal this specific finding and the final decision of the ALJ pursuant to 20 U.S.C. § 1415(e)(2).

Moreover, pursuant to the IDEA, failure to raise an issue at the administrative level will result in a waiver of the issue on appeal to a United States District Court. *David D. v. Dartmouth School Committee*, 775 F.2d 411, 424 (1st Cir.1985); *Field v. Haddonfield Board of Education*, 769 F.Supp. 1313, 1325 (D.N.J.1991); *see also Carey on Behalf of Carey v. Maine School Administrative District*, 754 F.Supp. 906 (D.Me.1990). The Woods raised the issue of residential placement at the Due Process hearing. When the ALJ rendered his May 9, 1991 decision which approved the settlement, he stated that several prehearing conferences and several days were spent hearing testimony and considering other evidence regarding whether residential placement is educationally necessary. Pursuant to 20 U.S.C. § 1415(e)(2), the court must review the records of the administrative proceedings and can hear additional evidence on the issue of whether residential placement is educationally necessary. *Ash v. Lake Oswego School District No. 7J*, 766 F.Supp. 852, 861 (D.Or.1991). Since the Woods raised the issue of educational necessity of residential placement at the ad-

---

**9.** Since the court has been presented with and will consider matters outside the pleadings in determining this motion, the Monroe School Board's cross motion to dismiss will be treated as one for summary judgment pursuant to Fed. R.Civ.P. 56.

ministrative level and since the court can hear additional evidence on the issue at trial, the court has subject matter jurisdiction in this case.

The Monroe School Board also argues that the Woods are barred from bringing the present claims against the School Board by the terms of the Stipulation of Settlement approved by the ALJ. In the Stipulation of Settlement, the Woods agreed that they would not make any further demand for funding of residential placement or for compensatory education of any kind on the Monroe School Board in consideration for the School Board's placement and funding of T.W. at the Pathway School for nine months from April 1, 1991 until January 1, 1992. The Monroe School Board argues that the complaint filed in this court raises the same issues and claims against the School Board as were raised in the Due Process hearing. As a result, the Stipulation of Settlement constitutes a bar to bringing the present action against the School Board since the ALJ found the settlement to be voluntary, to fully dispose of all issues in controversy and to be consistent with the law.

■ The court's jurisdiction pursuant to 20 U.S.C. § 1415(e)(2) is based on the status of the Woods as parties aggrieved by the findings and decision of the ALJ. The court can determine, when presented with evidence on the issue of the educational necessity of residential placement, if the ALJ's finding-that the settlement disposes of all issues in controversy and was consistent with the law-was factually and legally justifiable. *See Shirk v. District of Columbia*, 756 F.Supp. 31, 33 (D.D.C.1991); *Koester v. Wellsville–Middletown School District*, 960 F.2d 69, 71–72 (8th Cir.1992) (trial court should rule on the legal issues presented by plaintiff's claims where resolution of those claims was necessary to resolve issues not addressed in settlement agreement). If at trial the court determines that residential placement for T.W.

is educationally necessary, the Monroe School Board may be required to pay for the total costs of such placement. *See* N.J.A.C. 6:28–7.4(b)(4). Although the Woods voluntary agreed to forgo T.W.'s rights vis-a-vis the Monroe School Board, the School Board still has a duty to comply with the IDEA and New Jersey law and to provide T.W. with a free appropriate public education. *See Jackson v. Franklin County School Board,* 806 F.2d 623, 630 (5th Cir.1986). Consequently, the Stipulation of Settlement does not bar the present action against the Monroe School Board.

■ As a final argument for dismissal, the Monroe School Board argues that since the only claim for relief against it is for punitive damages, the complaint must be dismissed since the Supreme Court held in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) that a municipality is immune from punitive damages under 42 U.S.C. § 1983. *Id.* 101 S.Ct. at 2762. The complaint was filed pursuant to the IDEA as well as Section 1983. Because 20 U.S.C. § 1415(e)(2) of the IDEA permits the court to "grant such relief as [it] determines is appropriate," *Burlington School Committee v. Massachusetts Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 2002–2203, 85 L.Ed.2d 385 (1985),[10] the Monroe School Board will not be dismissed from this case.

## III. CONCLUSION

For the foregoing reasons, the motion of the plaintiffs Donald and Diane Woods for default judgment and for partial summary judgment, the cross motion of the defendants NJDOE, DYFS and DDD for summary judgment and the cross motion of the defendant Monroe Township Board of Education to dismiss shall be denied.

---

**10.** The court, in its discretion, can also "award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20

U.S.C. § 1415(e)(4)(B). In their prayer for relief, the Woods seek attorney's fees from all the parties.