**Donald WOODS and Diane Woods, on Behalf of their daughter T.W., Petitioners,**

v.

**NEW JERSEY DEPARTMENT OF EDUCATION; New Jersey Department of Human Services, Division of Developmental Disabilities; New Jersey Department of Human Services, Division of Youth and Family Services; Monroe Township Board of Education, Respondents.**

Civ. A. No. 91–4250.

United States District Court, D. New Jersey.

June 11, 1993.

Rebecca K. Spar, Cole, Schotz, Berstein, Meisel & Forman, Hackensack, NJ, for petitioners.

Richard J. Kaplow, Weinberg and Kaplow, Springfield, NJ and Daniel A. Griffith, Marshall, Dennehey, Warner, Coleman & Goggin, Marlton, NJ, for respondent Monroe Tp. Bd. of Educ.

Robert J. Del Tufo, Atty. Gen., Lisa Marin Main, Deputy Atty. Gen., Trenton, NJ, for respondents New Jersey Dept. of Educ. and New Jersey Dept. of Human Services defendants.

## OPINION

BROTMAN, District Judge:

This opinion addresses Petitioners' May 27, 1993 application for emergent relief. The Court conducted a telephonic hearing on Petitioners' application on June 4, 1993, at which time the application was denied. At the conclusion of the hearing, the Court informed the parties that it would set forth the reasons for its ruling in greater detail in a written opinion.

## FACTS AND PROCEDURAL BACKGROUND

Petitioners, Donald and Diane Woods, made this application on behalf of their daughter, T.W. T.W., who is twenty years old, suffers from a severe language based disability and an obsessive compulsive disorder. Consequently, she is considered disabled within the meaning of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, and is therefore entitled to special education services from the State of New Jersey. *Id.* § 1412. For most of her life, T.W. has been enrolled as a student with Respondent Monroe Township Board of Education ("Monroe"). The Monroe Township school district has provided T.W. with special education services for several years. T.W. is currently enrolled in a residential placement at the Pathway School in Jeffersonville, Pennsylvania.

Since the fall of 1990, the Woodses have been involved in ongoing litigation against Monroe and several agencies of the State of New Jersey. This litigation has involved various state administrative hearings, as well as an action filed by the Woodses in this Court in September 1991. The facts and procedural background of this litigation are exhaustively set forth in one published and two unpublished opinions previously rendered by this Court. *See Woods v. New Jersey Dep't of Educ.,* No. 91–4250, slip op. (D.N.J. Feb. 22, 1993); *Woods v. New Jersey Dep't of Educ.,* No. 91–4250, slip op. (D.N.J. July 15, 1992); *Woods v. New Jersey Dep't of Educ.,* 796 F.Supp. 767 (D.N.J.1992). Summarized below are the prior proceedings in this case that are most relevant to the instant application.

After several prehearing conferences and several days of testimony before Administrative Law Judge Robert W. Scott on the issue whether a residential placement was educationally necessary for T.W.,[1] the Woodses entered into a settlement agreement with Monroe on April 1, 1991. According to the terms of this agreement, Monroe agreed to place T.W. at the Pathway School, a residential facility, for a period of nine months. Monroe's pledge to fund T.W.'s placement at Pathway was given in return for the Woodses's pledge to make no further demands upon Monroe for funding of residential placement

---

1. Among the procedural requirements imposed on a state receiving federal funds pursuant to the IDEA is a requirement that parents of a disabled child must be given an opportunity to bring complaints about "any matter relating to the ... educational placement of the child," 20 U.S.C. § 1415(b)(1)(E), and to have those complaints reviewed at an "impartial due process hearing." *Id.* § 1415(b)(2).

or for compensatory education of any kind.[2] Prior to this settlement, T.W. had been attending the Hampton School, a daytime educational facility located in Burlington County, New Jersey.

Judge Scott approved the settlement agreement on May 9, 1991, holding that the agreement was voluntary, fully disposes of all issues in controversy, and is consistent with the law. Judge Scott ordered the parties to comply with its terms and held that his decision approving the agreement was final and was therefore appealable by bringing a civil action in a Superior Court of New Jersey or in a United States District Court. *See* 20 U.S.C. § 1415(e)(1), (2).

On September 24, 1991, after various state agencies denied their request for funding, the Woodses filed a complaint in this Court. The Woodses claim, *inter alia*, that the New Jersey Department of Education ("NJDOE"); the New Jersey Department of Human Services, Division of Developmental Disabilities ("DDD"); and the Division of Youth and Family Services ("DYFS") violated requirements imposed upon them by the IDEA by refusing to fund the residential component of T.W.'s Pathway placement. The Woodses subsequently moved for a default judgment and for partial summary judgment against the NJDOE. NJDOE, DYFS, and DDD cross-moved for summary judgment, and Monroe cross-moved to dis-

miss. This Court denied each of these motions. *See Woods v. New Jersey Dep't of Educ.*, 796 F.Supp. 767 (D.N.J.1992).

Realizing that Monroe would seek to terminate its funding of T.W.'s Pathway placement on December 31, 1991—the last day of the nine-month funding period provided for in the settlement agreement—the Woodses filed for an emergent relief hearing with the Office of Administrative Law on December 9, 1991 pursuant to N.J.A.C. 1:6A–12.1(a).[3] The Woodses argued, *inter alia*, that the Pathway School was T.W.'s "current educational placement" within the meaning of the IDEA's "stay put" provision, which provides in pertinent part that "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child." 20 U.S.C. § 1415(e)(3). The Woodses claimed that under the stay put provision, Monroe was obligated to continue to fund T.W.'s placement at Pathway during the pendency of the action they commenced in this Court and until Monroe recommended an educationally appropriate day placement and any proceedings they wished to initiate challenging the proposed placement were completed.

A hearing was held before Judge Scott on December 17, 1991. In a decision dated

---

**2.** The Settlement Agreement provides in pertinent part:

1. T.W. shall be placed by [Monroe School Board] at the Pathway School for a period of nine months commencing no later than April 1, 1991. . . .

2. In consideration of the aforesaid placement, [the Woodses] agree that they will make no further demand for funding of residential placement or for compensatory education of any kind upon the Monroe Township Board of Education.

3. It is agreed that at the end of the residential placement provided for in Paragraph 1, [Monroe] shall perform a reassessment of T.W., and shall provide an educationally appropriate day placement within a reasonable travel distance from [the Woodses's] residence until the completion of T.W.'s 21st year.

4. During the period of residential placement at Pathway School, [the Woodses] shall pursue their pending appeal procedures with DYFS, DDD or any other mental health agency, and [Monroe] agrees to cooperate with [the Woods-

es's] appeal including providing testimony, if necessary, upon request.

5. In the event that [the Woodses] prevail in their pending appeal and obtain approval by DYFS, DDD or any other health agency to fund the residential portion of a year round residential placement for T.W., then in that event, [Monroe] agrees to fund the educational portion of such residential placement only, until the completion of T.W.'s 21st year.

6. [The Woodses] understand that by entering into this agreement they are giving up their right to seek residential placement from the Monroe Township Board of Education except as provided herein.

**3.** N.J.A.C. 1:6A–12.1(a) provides in pertinent part:

As part of a hearing request, or at any time after a hearing is requested, the affected parent(s) . . . may apply in writing for emergency relief pending a settlement or decision on the matter.

January 7, 1992, Judge Scott granted the Woodses's request for emergent relief. Although in his opinion Judge Scott noted that, in light of the evidence he had considered at the time the parties entered into the settlement agreement, he considered Monroe's offer to pay for nine months of residential placement "generous," he had assumed when he approved the agreement that Monroe would have recommended an appropriate day placement before the expiration of the nine-month funding period. Pursuant to N.J.A.C. 1:6A–12.1(e),[4] Judge Scott ordered that T.W. remain at Pathway in a residential placement paid for by Monroe until the Woodses and Monroe agreed on an appropriate day placement or until further order of Judge Scott.

In February 1992 both parties separately requested due process hearings. Monroe asserted that it had completed its reassessment of T.W. and that it had recommended an educationally appropriate day placement at the Burlington County Special Services School District Campus ("BCSSSDC"). The Woodses asserted that Monroe had not conducted any reassessment, that T.W. continued to be improperly classified, that Monroe had failed to offer an appropriate day placement, and that Monroe had violated individualized education program meeting requirements. Both of these matters were assigned to Judge Scott, who held hearings that began on April 8, 1992 and concluded on June 4, 1992.

On April 23, 1992 counsel for Monroe made an oral application before Judge Scott for a ruling that Monroe would not be obligated to continue to fund the residential component of T.W.'s placement at Pathway once Judge Scott issued a final decision in the due process hearing. Monroe's counsel alleged that the April 1, 1991 settlement agreement relieved Monroe of any obligation to continue funding T.W.'s Pathway placement.

The Woodses objected to this request. They argued before Judge Scott that such an order would violate the stay-put provision of the IDEA. Over this objection, Judge Scott signed an order on May 19, 1992 permitting Monroe to terminate its funding of the residential component of the Pathway placement when he issued a final decision in this matter.

Seeking to prevent the termination of Monroe's funding upon the issuance of Judge Scott's final decision, the Woodses petitioned for an order to show cause in this Court on June 18, 1992. They argued that pursuant to the stay-put provision of the IDEA, this Court should enjoin Monroe from terminating funding of any aspect of T.W.'s placement at Pathway. A hearing was conducted by United States District Judge Jerome B. Simandle. Judge Simandle denied the Woodses's application for injunctive relief. He reasoned that the application was premature because Judge Scott had not yet issued his final decision, a decision that might have resulted in other relief acceptable to the parties. However, Judge Simandle denied the Woodses's application without prejudice to their right to refile it within thirty days after Judge Scott issued his final decision, should they wish to do so.

On November 20, 1992 Judge Scott issued his final decision on the merits of the due process proceedings initiated in February 1992. He found that the Woodses waived their right to seek residential placement and funding after the nine months provided for in the settlement agreement. In addition, Judge Scott ruled that the day placement at BCSSSDC offered by Monroe was educationally appropriate under the IDEA. He ordered that T.W. be enrolled there immediately and that Monroe terminate its funding of T.W.'s placement at the Pathway School.

On December 21, 1992 the Woodses refiled their application for an order to show cause, arguing once again that under the stay put provision of the IDEA, this Court should order Monroe to continue to fund T.W.'s placement at the Pathway School until this

---

**4.** N.J.A.C. 1:6A–12.1(e) provides in pertinent part:

The judge may order emergency relief if the judge determines from the proofs that:

1. The applicant has a reasonable probability of ultimately prevailing on the merits;

2. [T]he student's education program will be terminated or interrupted; and

3. The relief requested is narrowly defined to prevent the specific harm from occurring and will not cause unreasonable expense and substantial inconvenience.

federal litigation and any subsequent court proceedings are completed. The Court denied the Woodses's application, reasoning that an agreement by a local educational agency to fund for a limited period of time the placement of a child in a school of her parents' choosing does not constitute an "educational placement" within the meaning of 20 U.S.C. § 1415(e)(3). *See Zvi D. v. Ambach,* 694 F.2d 904, 908 (2d Cir.1982). Therefore, the Court concluded, the Pathway School is not T.W.'s current educational placement within the meaning of that provision. Accordingly, the Court held that the Woodses were not entitled to invoke the stay put provision to force Monroe to continue to fund T.W.'s placement at the Pathway School.[5]

The Woodses also moved to file a complaint supplementing the complaint they filed in September 1991. They seek a review of Judge Scott's decision of November 20, 1992 finding that a day placement at BCSSSDC would be educationally appropriate and ordering that T.W. be enrolled there immediately. The Court granted the Woodses's motion, which was unopposed, reasoning that common sense required that the Woodses's appeal be resolved in the context of their pending action. To date, however, the Woodses have failed to file a supplemental complaint.

On April 23, 1993 Monroe informed the Woodses that an opening now exists at BCSSSDC and instructed them to contact BCSSSDC to arrange for an intake. The Woodses responded by claiming that it would be inappropriate to set up an intake before a new Individualized Education Program ("IEP") was prepared for T.W. under the IDEA.[6] The failure of T.W. to be present for an intake would result in the loss of the opening at BCSSSDC. Consequently, Monroe applied to an ALJ for emergent relief, and the matter was assigned to Judge Scott. Monroe sought an order compelling T.W. and her parents to present themselves at BCSSSDC for intake and enrollment or, in the alternative, for an order providing that if they fail to present themselves to BCSSSDC, T.W. shall be deemed to have withdrawn from the Monroe Township School District. On May 13, 1993 Judge Scott granted Monroe's application, ordering T.W. to present herself for an intake interview to occur on or before June 4, 1993.

On May 27, 1993 the Woodses filed in this Court an application for an order to show cause. The Woodses seek an order declaring Judge Scott's May 13, 1993 order void, claiming that he had no jurisdiction to issue that order. They also seek an order enjoining Monroe from enrolling T.W. at BCSSSDC and terminating her Pathway School placement until Monroe has properly prepared a new IEP for T.W. Finally, they seek an order requiring the NJDOE, the DYFS, and the DDD to cooperate in resolving interagency funding disputes among them and to fund the residential portion of the cost of T.W.'s placement at Pathway.

DISCUSSION

■ Under the IDEA, "[a]ny party aggrieved by the findings and decision made [at a state administrative hearing has] the right to bring a civil action with respect to the complaint presented ... in any State court of competent jurisdiction or in a district court of the United States." *Id.* § 1415(e)(2). In reviewing a complaint filed pursuant to section 1415(e)(2), the district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court deter-

---

5. The Woodses have appealed that order. *See Woods v. New Jersey Dep't of Educ.,* No. 91–4250, slip op. (D.N.J. Feb. 22, 1993), *appeal docketed,* No. 93–5123 (3d Cir. Mar. 1, 1993). That appeal is pending.

6. An IEP is "a written statement for each child with a disability developed in any meeting by a representative of the local educational agency ... the teacher, the parents or guardian of such child, and, whenever appropriate, such child."

20 U.S.C. § 1401(a)(20). The IEP must include a statement of the child's present levels of educational performance, a statement of annual goals, a statement of the specific educational services to be provided to the child, and appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved. *Id.*

mines is appropriate." *Id.* Here, the Woodses did not move the Court (once again) for leave to supplement their complaint to assert a claim under section 1415(e)(2). Rather, with one week remaining before the date upon which T.W. was ordered to present herself for her intake, the Woodses sought both an immediate review of Judge Scott's order and injunctive relief. The Woodses, however, fail to cite any provision of the IDEA or of any other law that gives this Court the power simply to vacate decisions of the state ALJ based solely on a disappointed party's order to show cause. Accordingly, this portion of the Woodses's application was denied.

■ Moreover, as the Woodses ought to have been aware, the Court could not grant the Woodses's motion for an order requiring the NJDOE, the DYFS, or the DDD to fund the residential portion of the cost of T.W.'s placement at Pathway. The Woodses moved for summary judgment on essentially the same grounds in December 1991. *See Woods v. New Jersey Dep't of Educ.*, 796 F.Supp. at 772–74. The Court denied their motion for summary judgment, reasoning that before it could order a defendant to fund T.W.'s placement at the Pathway school, it must determine whether residential placement was necessary for T.W. under the IDEA, a determination the Court could make only after the parties had presented evidence on this issue at trial. Accordingly, this portion of the Woodses's application was also denied.

CONCLUSION

In summary, Petitioners' May 27, 1993 application for emergent relief is denied in its entirety.